Joseph H. Gellert, J.
Defendant, as executor and trustee of the estate of Rose Rosenthal, deceased, is the owner of an apartment building in the City of Poughkeepsie. The information herein charges that the structure is a “ danger and hazard to the health, safety, morals and welfare of the occupants or the public, ’ ’ an alleged violation of the Minimum Housing Standards Ordinance, Code of Ordinances, City of Poughkeepsie.
Three specific instances of disrepair are before the court: first, an allegedly deteriorated roof of a garage, an accessory structure; second, allegedly deteriorated porches, not in good repair and with rotting due to leaking roofs; third, walls of the building are alleged to be structurally unsound ‘ ‘ in that ’ ’ plaster in a second floor bathroom and in the front and rear halls is cracked.
The information declares the source of the People’s knowledge of defects as a series of inspection over a period in excess of eight months. Defendant herein moves to suppress the evidence thus discovered, alleging that the inspections were made in violation of his right against unreasonable searches as provided in the Fourth Amendment of the United States Constitution and section 12 of article I of the New York State Constitution.
After considerable research by the court and analysis of the exhaustive briefs presented by both counsel, the court concludes that the various items sought to be suppressed present distinct and separate matters of law. They will be discussed below.
The initial issue presented by the prosecution is the matter of defendant’s standing to move for suppression of the evidence. It is undisputed that defendant is not a resident of the premises in question. The People assert that the traditional rule is such *567 that an absentee landlord lacks standing to complain of searches in structures owned by him and leased to others. In support thereof, the cases of Thomas v. United States (154 F. 2d 365); Curry v. United States (192 F. 2d 571) and Schnitzer v. United States (77 F. 2d 233) are cited.
The outstanding hour in the history of “ standing ” to move for suppression was the Prohibition era. The great body of law that supports the view of the People herein stems from searches of “ stills ” after which owners of property in which the “ still ” operated were prosecuted together with the entrepreneurs. There arose a general rule therefrom which is stated as follows: ‘1 An owner of the premises searched who is not in possession thereof, such as a lessor or sublessor, has no standing to raise objections as to the legality of the search and seizure.” (Ann. 78 ALR 2d 246, 255-256, citing at p. 256, Hardwig v. United States, 23 F. 2d 922 and Schnitzer v. United States, supra.)
In light of this “rule”, the most difficult area under consideration is that of the standing, or lack thereof, of defendant with regard to the search of the bathroom ceiling in one of the leased apartments. A reading of the above-stated “rule”, without more, would easily dispose of the motion in this regard. However, the stringencies in the concept of “standing” commenced to erode in 1960 with the United States Supreme Court decision in Jones v. United States (362 U. S. 257). It was there recognized that where a defendant was accused of possessing narcotics or other contraband, he was faced with an unconscionable dilemma. He must deny possession, which is consistent with a plea of not guilty, and, concurrently, assert a possessory interest in the contraband so as to have standing to move for suppression. In Jones, the court relieved defendants in contraband cases of this difficult choice. The ruling in Jones, then, relaxes the traditional requirements. In 1962 in the then Kings County Court, New York, the court in People v. Smith (35 Misc 2d 533) expanded the Jones decision.
Taking cognizance of the broad verbiage in section 813-c of the Code of Criminal Procedure, the Smith court attempted to accomplish two things. First, it declared that in New York, the law would henceforth be that categorization of the evidence as “ contraband” or “fruits ” of a search, will no longer be determinative of standing. Second, it purports to give standing to anyone against whom seized evidence may be used. Presumably, this includes absentee landlords.
The Smith decision has been subsequently analyzed, dissected, ignored in part and followed in part. (See, for example, *568 People v. Cefaro, 45 Misc 2d 990, affd. without opn. 28 A D 2d 694, affd. 21 N Y 2d 252; People v. Manzi, 38 Misc 2d 114, 118; People v. Kramer, 38 Misc 2d 889, 893.)
From the subsequent amplification of the Smith doctrine, the conclusion is to be derived that the statutory wording in New York is broad on .the issue of standing, but is still subject to analysis from the standpoint of the status of the movant. In other words, it remains the law that not every defendant possesses .standing.
The court’s .research in the case at bar discloses no precedent encompassing the facts herein. It is a certainty, however, that the relatively new (1962) New York statute is sufficiently broad to relegate into obsolescence the concept that an otherwise illegal search may not be attacked because the premises searched is not defendant’s home or “ curtilage.” (That this may also be the current Federal rule is discussed below in connection with Katz v. United States, 389 U. S. 347.)
Having thus decided, the effect on defendant’s standing of the status of the property as a leasehold, must be considered.
In each and every case found by the court which denies a landlord standing to object to a search of leased premises, the evidence is a chattel which does or could belong to a tenant. It is the privacy of the tenant that is thus invaded. Therefore, the landlord has traditionally been precluded from moving for suppression. We are faced in the instant case with either denying defendant standing merely because the alleged structural defect exists within a leased area or acknowledging his status to so move as the court would be required to do if defendant himself occupied the premises. In other words, the issue is whether the interest in the walls and ceiling of a building are any less personal to the owner because. someone else presently possesses a tenancy.
The most definitive support for the immateriality of the area involved is found in the 1967 United States Supreme Court decision of Stewart, J. in Katz v. United States (supra, pp. 351, 352): “ the parties have attached great significance to the characterization of the telephone booth from which the petitioner placed his calls. The petitioner has strenuously argued that the booth was a ‘ constitutionally protected area.’ The Government has maintained with equal" vigor that it was not. But this effort to decide whether or not a given ‘ area ’ viewed in the abstract, is ‘ constitutionally protected ’ deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is *569 not a subject of Fourth Amendment protection * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See Rios v. United States, 364 U. S. 253 * * * Ex parte Jackson, 96 U. S. 727.”
The court also commented (p. 350): “ [The Fourth] Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all. ’ ’
Unlike those chattels sought to be suppressed in other cases, the walls and ceiling herein will presumably survive the present tenancy. The evidence herein was, at the time of the search, and will remain the personal province and responsibility of the defendant landlord. Thus, his interest, while not possessory in the traditional sense will sustain “ standing.” It is held that where the evidence consists of the structure of premises owned by defendant, he has status to move to suppress regardless of existing tenancies.
The court must now consider the merits of the motion. The search of the bathroom ceiling was not incident to an arrest. Surely the tenant, whether she allowed the inspector into the apartment voluntarily or was duped, cannot give a binding consent to a search of property personal to her landlord. It is not disputed that the inspector lacked a search warrant. For an excellent discussion on the need therefor by a city housing inspector, see Blabey, See and Camara: Their Far-Reaching Effect on State Regulatory Activities and the Origin of the Civil Warrant in New York (33 Albany L. Rev. 64 [1968]), discussing Camara v. Municipal Ct. (387 U. S. 523) and See v. City of Seattle (387 U. S. 541).
The search being thus unreasonable as a matter of law, the motion is granted as to the bathroom ceiling.
If a portion of the structure within leased premises can be attacked by an absentee landlord, it follows, a fortiori that common hallways must be treated in a similar manner. Defendant’s possessory interest therein cannot be denied. Here the inspector merely walked in, observed the walls and prepared his information on the basis of that search. Again, the search was unlawful and the motion must be granted.
As to the garage and porches, there is no evidence before the court that any search was made. Rather, it appears that the inspector’s conclusions were drawn from an observation from outside the buildings. ‘ ‘ Search ’ ’ implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view. (People v. Exum, 382 *570 Ill. 204, 210.) The motion, therefore, as it pertains to the garage and porches is denied and defendant, as the evidence is presented at trial, will have ample opportunity to further object to the admissibility.
The court is not unmindful of the practical effect of this decision. The attention of the Nation, and especially its older portions, such as ours, has lately been focused on substandard living conditions and urban blight. Housing and building codes have been passed to enforce minimum standards. Prosecutions such as the case at bar arise therefrom. The court shares the concern of the executive and legislative branches of government with regard to the deterioration of portions of the urban area. Maintenance of safety and health hazards is not condoned by the court. However, it is the duty of the judiciary, although sometimes unpleasant, to dispense justice mindful of the rights of the individual as well as the community. If the former are eroded, the latter will not survive.
Accordingly, it will be the added responsibility of inspectors to obtain search warrants. The criteria for obtaining such warrants has not yet been defined. However, it would seem reasonable to assume that they will be readily granted. In fact, the proposed section 802-b of the Code of Criminal Procedure, before the 1969 Legislature, will if passed, authorize administrative warrants not only for specific structures, but for whole “ areas ” as well. “ Probable cause ” that a criminal situation exists may no longer be necessary in area searches. (See Berkman, The Aftermath of Mapp v. Ohio, 5 Trial Lawyers Q. 67, 73 [No. 1].)
Until the Legislature speaks, warrants will be issued pursuant to the authority of the See and Camara cases (supra).
There being evidence to be introduced in this case, no order of suppression is necessary. The suppressed evidence will not be admitted at trial.