In the Matter of EUGENE DONNELLY, Petitioner, v INCORPORATED

VILLAGE OF GARDEN CITY et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondents, dated November 17, 1977, and made after a hearing, which dismissed the petitioner from the police force after he admitted that he had committed the acts with which he was charged. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. The petitioner's dismissal was proper (see *Matter of O'Connor v Frank,* 38 NY2d 963; *Matter of Pell v Board of Educ.,* 34 NY2d 222). Petitioner's contention that he was induced to reveal his identity as the wrongdoer, solely on the promise that any sanction imposed would be *less* than dismissal, is totally unsupported. As a bare allegation in his answer to the charges it does not reach the minimum level of credibility necessary to consider it. Latham, J. P., Gulotta, Shapiro and Cohalan, JJ., concur; Suozzi, J., dissents and votes to modify the determination by reducing the punishment imposed upon petitioner to a one-year suspension in accordance with the following memorandum: Petitioner, an 11-year veteran of the Garden City Police Department, was dismissed from his position because of two acts of misconduct committed within the time frame of one tour of duty: (1) between 11:00 P.M. and 3:00 A.M. on October 12-13, 1977, petitioner punctured the front tires of the police chief's car with a knife; and (2) between 3:00 A.M. and 5:00 A.M. on October 13, 1977, he unnecessarily sounded his siren on the block where the Mayor resides. This dismissal, which the majority sanctions, is, in my view, " ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness",' " (see *Matter of Pell v Board of Educ.,* 34 NY2d 222, 233) and should be modified to a one-year suspension. There is nothing in *Pell* which precludes a modification of the punishment of dismissal imposed herein since the Court of Appeals itself stated in *Pell* (p 234), that "terminology like 'shocking to one's sense of fairness' reflects a purely subjective response to the situation presented and is hardly satisfactory". Indeed, it is my view, upon a close examination of the facts in *Pell* (which case the majority has cited to support the dismissal) and the cases decided subsequent thereto, that there is a sound basis for judicial correction of the punishment imposed at bar. The *Pell* case consisted of five different instances of administrative sanctions. The five petitioners included (1) a public school teacher who repeatedly absented himself and falsely certified that he was ill; (2) a police officer who, in contravention of police regulations, fired a revolver from the window of the Public Safety Building (and had no recollection thereof), refused to submit to a blood test for intoxication and failed to file a written report; (3) a construction inspector employed by a board of education who was indicted for receiving bribes and pleaded guilty to receiving unlawful gratuities; (4) a change-making employee of the New York City Transit Authority who stole money from a coin box; and (5) a police officer, who on several occasions when he was supposedly home ill on paid sick leave, was working for a private firm. In all five of these cases, the Court of Appeals upheld the punishment of dismissal which had been imposed on the petitioners by their employers. A close perusal of the fact pattern of each of these five cases reveals that the petitioners either: (1) engaged in repeated misconduct; (2) engaged in conduct constituting venality or corruption; or (3) engaged in conduct displaying a lack of qualification for the particular position or potentially causing serious injury to the public or the governmental agency involved. Since the *Pell* decision, the Court of Appeals has consistently applied these guidelines, even in cases involving policemen whose status presumably subjects them to closer scrutiny than that of other public employees. In *Matter of Alfieri v*

*Murphy* (38 NY2d 976, 977) petitioner, a policeman, was found guilty of shoplifting, a venal and corrupt act displaying "moral turpitude" and his dismissal from the force was upheld. In *Matter of Bal v Murphy* (43 NY2d 762, 763) the court upheld a punishment of dismissal imposed on a police officer and in so doing stated that "petitioner's record * * * reveals a pattern of repeated violations of police regulations * * * which, along with the present ones, could be found to manifest either an unwillingness to obey orders or otherwise adapt to the disciplines required of a police officer [and t]he commissioner had a right to take these in account in his disposition". In the absence of any of these afore-noted factors, the Court of Appeals has not hesitated to modify the punishment of dismissal imposed by an administrative agency as can be seen from the recently decided case of *Matter of Harris v Mechanicville Cent. School Dist.* (45 NY2d 279). The *Harris* case involved a teacher who was using explicit street language from the novel "Catcher in the Rye" while teaching his students about that novel. During the fall of 1973 complaints from parents caused the school authorities to meet with the teacher and discuss the problem. The teacher voluntarily agreed to drop the use of the book and find an appropriate substitute. However, during the fall 1974 semester, the teacher, without warning and despite the earlier agreement, resumed use of the book. On November 25, 1974, the teacher was summoned to a conference in the principal's office. After five minutes, the teacher abruptly walked out and refused the principal's request, made in the presence of others, to return. The board of education thereupon dismissed the teacher. In describing the teacher's conduct, the Court of Appeals noted that he had breached an agreement relied on by school authorities and had arrogated "the sole power of judgment" *(Harris, supra,* p 285). Nevertheless, the court found that the teacher's conduct was isolated, and "involved neither cardinal moral delinquency nor predatory motive" *(Harris, supra,* p 285) and that the charges did not indicate a lack of capacity as a teacher or cause grave injury to the school district. The Court of Appeals found the punishment "so disproportionate to the offense as to shock the court's sense of fairness" and directed that the matter be remanded to the board to fix a punishment. The court noted that an appropriate sanction might be as light as a letter of reprimand or, at most, a one year's suspension without pay. On the other hand, on the very same day that *Harris* was decided, the Court of Appeals refused to disturb the punishment of dismissal imposed on an accounting executive in *Matter of Short v Nassau County Civ. Serv. Comm.* (45 NY2d 721). The court distinguished that case from the former on the ground that the petitioner in *Short* demonstrated a " 'persistent unwillingness to accept the directives of his superiors' " *(Harris, supra,* p 285). There is nothing in the instant case which makes petitioner's conduct any more offensive than that of the school teacher in *Harris.* Petitioner did not contest the charges; indeed, he acknowledged his acts and expressed shame at his conduct. He further testified that he had never been found guilty of any type of disciplinary infraction during his 11 years on the force. Petitioner attributed his conduct to severe tension exacerbated by fatigue which resulted from difficulties in negotiating an employment contract for the police with the village. Clearly, the two acts of misconduct committed by petitioner within the time frame of one tour of duty were isolated, did not involve "cardinal moral delinquency nor predatory motive" *(Harris, supra,* p 285), and did not indicate a lack of capacity as a police officer or cause grave injury to the police department or the public. As final support for its position, the majority cites *Matter of O'Connor v Frank* (38 NY2d 963). In *O'Connor,* the

policeman was fined five days' pay, and that punishment was reduced to a fine of one day's pay by this court. The Court of Appeals reinstated the fine of five days' pay, citing *Pell.* However, the *O'Connor* case is clearly distinguishable from the proceeding at bar in view of the relatively minor punishment imposed by the administrative agency therein, as opposed to the drastic punishment of dismissal imposed in the instant proceeding. Accordingly, I dissent and vote to reduce the punishment imposed on petitioner to a one-year suspension.