■ In the Matter of A. GEBBIA, INC., et al., Appellants, v CITY OF NEW YORK et al., Respondents. — Amended order and judgment (one paper), Supreme Court, New York County (Ira Gammerman, J.), entered May 4, 1984, which, *inter alia,* dismissed petitioners-appellants' CPLR article 78 petition seeking to annul the determination of respondent Department of Consumer Affairs (DCA) suspending petitioners-appellants' commercial refuse removal licenses and imposing fines for petitioners-appellants' failure to comply with respondents' requirements related to auditing and disclosure of books and records, is affirmed, without costs.

Special Term properly dismissed the petition as to all petitioners other than those whose suspensions were based upon their failure to comply with the audit notices and to submit the required balance sheets and financial statements. The dissent does not take issue with the correctness of this determination; instead, our esteemed brother finds the penalty of license suspension for failure to comply "disproportionate to the offense." Rather than demonstrating, as the dissent argues, that "[a]ll petitioners did was litigate the issue through proper channels * * * an issue properly raised and crucial to [its] business" this record reflects the use of obstructive tactics and a studied recalcitrance by the petitioners to comply with the directives of the Department. It is noted that fines were imposed upon the petitioners pursuant to a final order issued in July, 1983 for their failure to submit the financial statements and the books and records required by the Department.

Those fines were not paid, and rather than seek judicial review of those orders at that time, as authorized by the administrative hearing guide, appellants elected to seek a rehearing, merely reasserting in their application those arguments they had initially put forth which had been rejected by the Department. And this despite the requirement in the hearing guide that "any such petition must be confined to new questions raised by the decision or final order and which the petitioner had no opportunity to argue before the Department." It was only after this requested rehearing had been denied and the penalty of suspension imposed that appellants sought judicial review. This record thus does not support the conclusion that suspension is a sanction which is, "under the circumstances, so disproportionate to the offense as to shock the conscience of the court." (*Matter of*

*Pell v Board of Educ.,* 34 NY2d 222, 232-235; *Matter of Harris v Mechanicville Cent. School Dist.,* 45 NY2d 279, 284.) We agree with respondent DCA that the penalty of license suspension, under the circumstances here present, was fully justified when consideration is given to "the substantial public harm which might be caused by repeated violations and the deterrent effect which a substantial penalty might have on the individual violator and upon others who might be tempted to engage in similar misdeeds." (*Schaubman v Blum,* 49 NY2d 375, 379.) Concur — Silverman, Carro, Milonas and Alexander, JJ.

Kupferman, J. P., dissents in part in a memorandum as follows: I would modify the amended order and judgment of the Supreme Court dismissing petitioners-appellants' CPLR article 78 proceeding to the extent of granting petitioners time to comply with respondent's Department of Consumer Affairs (DCA) provisions, and, as modified, would affirm.

Petitioners-appellants, 66 firms, are commercial waste removers. They are licensed by the respondent DCA and must renew their license every two years. As part of this process, the DCA requires firms to file certain financial disclosure forms, to assist it in determining rates. The underlying dispute was triggered in 1982, when the DCA, apparently on its own initiative, changed the requisite forms. When these forms were distributed, the licensees objected, and DCA "waived the requirement that these forms be filed as a condition precedent to license renewal."

Also in 1982, the DCA sent out letters notifying the licensees that their books were to be audited. The DCA ordered the firms to turn over customer ledgers, general ledgers, all subsidiary ledgers and numerous other books and documents. Petitioners characterized this as "virtually all their business books and records." No date was provided by the DCA as to when the books would be returned. Counsel for the various licensees objected to this broad-based demand. Notices of violation were issued by the DCA when the licensees failed to appear for the audits. Although scheduled, a hearing was not held, as the parties agreed to a stipulated set of facts. A memorandum of law was filed by the petitioners, and a hearing officer ruled against them, fining them and ordering them to comply. The DCA denied an administrative appeal and thereafter issued notices of license suspension to those petitioners who had not complied. At this point, petitioners commenced the instant article 78 proceeding. A stay of the suspension order was granted, pending determination of this petition.

This article 78 proceeding, with 153 petitioners, was heard before Gammerman, J. The petition was granted as to those who

failed to file either the supplemental information sheet or the truck list, ruling that suspension of their licenses was improper. As to the remaining 66 petitioners, Justice Gammerman ruled that the DCA had properly suspended their licenses for failing to comply with the audit notices and failing to submit the requisite balance sheets and financial statements on the DCA forms. It is from this decision that the petitioners appeal.

In the case at bar, the audit notices required the petitioners to ship a substantial number of books and records to the city, for an unspecified length of time. This is a far cry from a regulation simply requiring books and records to be available for inspection. (See *Matter of Glenwood TV v Ratner,* 103 AD2d 322.) It has long been held that a blanket, warrantless search cannot be required as a condition of licensing. (*Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d 647, 658.) Here, the DCA was, in effect, requesting all the petitioners' major business records, without a warrant. This was a sharp change from its prior practice, merely requiring a balance sheet and profit and loss statement. In addition, when petitioners could not follow the new DCA form, pending determination, they filed their own forms, attempting to comply. In light of the fact that all this stemmed from changes in DCA policies and forms, instituted without a hearing, it could be anticipated that valid questions, if not litigation, would arise. To penalize the petitioners by suspending their licenses when they contested the DCA's actions is unduly harsh.

Respondents assert that this penalty was necessary and appropriate. Both sides cite *Matter of Pell v Board of Educ.* (34 NY2d 222, 232-235) as the standard, stating that a sanction should only be set aside if it is "so disproportionate to the offense as to shock the conscience of the court." Respondents claim that the suspension here was "fully justified in view of appellants' recalcitrant and obstructive tactics." However, the tactics characterized as recalcitrant and obstructive involved litigation over properly disputed points of law. All petitioners did was litigate the issue through proper channels, first through administrative levels, then by an article 78 proceeding. This hardly seems to qualify as recalcitrant and obstructive. Forcing a licensee to risk license suspension for litigating an issue properly raised and crucial to his business seems disproportionate to the offense. Instead, now that the matter has been considered, licensees should be given time to comply.