In the Matter of JAMES D. KRASOWSKI, Petitioner, v STATE EDUCATION DEPARTMENT, Respondent.

Third Department, November 25, 1987

## APPEARANCES OF COUNSEL

*Ricken, Goldman, Sussman & Blythe (Alan N. Sussman* of counsel), for petitioner.

*Robert Abrams, Attorney-General (John J. O'Grady* of counsel), for respondent.

## OPINION OF THE COURT

CASEY, J.

Petitioner, a registered physician's assistant, was charged in July 1982 with the crimes of sodomy in the second degree and sexual abuse in the second degree based upon allegations of two male minors concerning an overnight camping trip they took with petitioner in August 1981. In response to the charges, petitioner promptly entered an *Alford* plea of guilty *(see, North Carolina v Alford,* 400 US 25) to the reduced crime of assault in the third degree. In August 1982, petitioner was sentenced to a brief period in jail and a period of probation, which he served.

The Office of Professional Medical Conduct (hereinafter OPMC) instituted a disciplinary proceeding against petitioner in June 1985 by serving charges containing two specifications of professional misconduct, one based upon the conviction (Education Law § 6509 [5] [a] [i]) and the second alleging that petitioner had practiced his profession while his ability was impaired within the meaning of Education Law § 6509 (3). A number of witnesses testified at the administrative hearing, including petitioner, the two boys whose allegations formed the basis for the criminal action, and the psychiatrist who prepared the written psychiatric evaluation of petitioner which was submitted to the sentencing court in the criminal action. The evaluation concluded that petitioner "shows no indication of any pedophiliac tendencies, other aberrant behavior, character disorders, severe neurosis or psychosis", but at the administrative hearing questions arose concerning the objectivity of the evaluation. The hearing committee issued its report on January 30, 1986 concluding that only the first specification, based upon the conviction, should be sustained. As to the second specification, based upon practicing the profession while ability impaired, the hearing committee

found insufficient evidence to sustain the charge. The penalty recommended by the hearing committee consisted of a suspension of petitioner's license to be stayed subject to a three-year probationary period, and a $2,000 fine.

Upon review, the Commissioner of Health adopted the hearing committee's findings and conclusions, but recommended to the Board of Regents that the penalty be modified by providing that the stay of the suspension not go into effect until petitioner undergoes a psychiatric examination and OPMC and the Board of Regents are satisfied that petitioner is not suffering from any psychological disability. The Commissioner of Health stated that he recommended this additional measure due to "my lack of confidence in the total objectivity of the psychiatric evaluation presented to the Committee. Absent an objective evaluation, I cannot conclude that [petitioner] does not suffer from a pedophilia which would affect his ability to practice". The final determination by the Commissioner of Education, which is under review here, adopted the findings and conclusions of the hearing committee, but modified the additional measure recommended by the Commissioner of Health to provide: "[Petitioner's] registration * * * be suspended wholly upon the charge of which [petitioner] has been found guilty until such time as [petitioner] successfully completes, at [his] expense, whatever course of therapy or treatment is prescribed by a psychiatrist selected by [petitioner] and approved in advance, in writing, by the Office of Professional Medical Conduct (OPMC) inasmuch and so long as OPMC will monitor the probation recommended by the Regents Review Committee, that said suspension shall continue until OPMC is satisfied that [petitioner] has successfully completed said therapy and treatment, at which time OPMC shall notify [petitioner] of the termination of the suspension of [petitioner's] registration * * * and that, upon such termination of suspension, [petitioner] be placed on probation for a period of three years".

Petitioner's sole objection in this proceeding is to the conditions attached to the stay of the suspension, which he contends are arbitrary, capricious and irrational. Relying upon the traditional test retained by the court in *Matter of Pell v Board of Educ.* (34 NY2d 222, 233-234), respondent contends that this court's scope of review is limited to whether the penalty is shocking to one's sense of fairness, and that after comparing the severity of the penalty's impact on petitioner to the gravity of the proven charge and the potential harm to

the public in permitting petitioner to practice his profession if his ability is impaired, the penalty herein cannot be considered shocking to one's sense of fairness. We agree with petitioner.

Respondent correctly cautions that, pursuant to the principles set forth in *Matter of Pell v Board of Educ. (supra)*, judicial review of administratively imposed sanctions is limited. "But, that the standard against which such sanctions will be tested leaves the administrative body with great latitude does not mean that disciplinary measures can go unchecked by judicial review" *(Matter of Harris v Mechanicville Cent. School Dist.*, 45 NY2d 279, 284). Thus, the courts have intervened where the penalty was found to be overly harsh and excessive in comparison to the gravity of the proven charges *(see, supra; Matter of Munger v Drohan*, 115 AD2d 319; *Stevenson v Spencerport Cent. School Dist.*, 97 AD2d 969, *lv dismissed* 62 NY2d 644), although such cases are rare. But judicial review is not limited to determining whether the penalty is shockingly severe for the proven charges. In *Matter of Ahsaf v Nyquist* (37 NY2d 182), the petitioner, a licensed practical nurse, was found guilty of charges of heroin and cocaine addiction and unprofessional conduct as a consequence thereof, and her license to practice was unconditionally revoked. The Court of Appeals found nothing inappropriate in a penalty of unconditional revocation for the proven charges, but concluded from the record that the petitioner's license was revoked not due to the proven charges, but due to her "lack of candor", an allegation not encompassed by the charges *(supra, at 185)*. The determination was annulled as an abuse of discretion *(supra, at 186)*. It is apparent, therefore, that the court must look not only at the severity of the penalty in comparison to the gravity of the proven charges, but also at the basis upon which the penalty was imposed by the administrative agency. In short, under the principles articulated in *Matter of Pell v Board of Educ. (supra)*, the court's review of an administrative agency's discretionary determination imposing a penalty should include an inquiry as to whether the agency's decision "was within the range of the rational conclusions that could be reached on the basis of the record before it" *(Matter of Garayua v New York City Police Dept.*, 68 NY2d 970, 972). The penalty at issue here fails to meet this test.

A review of the record reveals that the only articulated basis for imposing the penalty's requirement that petitioner undergo psychiatric evaluation and treatment was the Com-

missioner of Health's "lack of confidence" in the objectivity of the written psychiatric evaluation of petitioner submitted at the hearing. In its brief to this court, respondent advances an argument which explains the reasoning purportedly employed by the Commissioner of Health. Conceding that the only proven charge, i.e., the conviction of the crime of assault in the third degree, does not support the penalty's requirement that petitioner undergo psychiatric evaluation and treatment, respondent argues that the facts and circumstances underlying the proven charge provide the necessary support. As we read respondent's argument, it finds support in the record for concluding that petitioner engaged in certain "illegal touching" or "aberrant conduct" indicative of a possible psychiatric impairment and that, to protect the public, an appropriate mechanism was fashioned to prevent petitioner from practicing his profession until there was satisfactory proof that petitioner was not impaired.* This rationale appears to shift the burden of proof on the issue of impairment to petitioner, but we annul the penalty as an abuse of discretion solely on the basis of the factual findings and conclusions contained in the hearing report, which were adopted in the final determination.

The report of the hearing committee expressly found that petitioner did not engage in all of the acts alleged in the statements of the two victims which formed the basis for the original criminal charges. It made no finding as to which acts did occur and which acts did not; rather, it concluded that petitioner "demonstrated poor judgment and * * * engaged in unwise and inappropriate behavior". On the issue of impairment, as alleged in the second specification of the charges, the report noted the absence of any expert proof that the acts allegedly committed by petitioner would constitute practicing the profession while the ability to do so was impaired within the meaning of Education Law § 6509 (3). In finding insufficient evidence to sustain the second specification of the charges, the report expressly concluded that petitioner's ability to practice during the relevant time period was not impaired within the meaning of the statute. In light of these

---

* While not a basis for our decision herein, it is noteworthy that despite "much concern" for protecting the public, charges were not filed against petitioner until some 3 years after he entered his guilty plea, and another 1½ years passed before the final determination was made. During this lengthy period, petitioner apparently practiced his profession without incident.

findings and conclusions, adopted in the final determination, there is no rational basis in the record for concluding that petitioner should submit to further psychiatric evaluation and treatment. While the imposition of this type of penalty is not limited to cases in which there is an actual finding that a licensee is physically or mentally impaired *(see, Matter of Hening v Ambach,* 132 AD2d 783, 784 [where the issue of impairment was neither raised by charges nor decided in the final determination]), it is irrational to require psychiatric evaluation and treatment in a case where the issue of psychiatric impairment has been litigated at the administrative level and the licensee has been found free of any impairment.

WEISS, J. (dissenting). We respectfully dissent. Education Law § 6511 (2) (c) authorizes the suspension of a professional's license "until the licensee successfully completes a course of therapy or treatment prescribed by the regents". The imposition of this penalty is not statutorily limited to instances in which the licensee has practiced his profession while his ability was impaired or where he was otherwise found physically or mentally impaired *(see, Matter of Hening v Ambach,* 132 AD2d 783-784). Considering the nature of petitioner's conduct underlying the assault conviction, it is our view that it was rational to require petitioner to undergo further psychiatric evaluation and, if necessary, appropriate treatment. As the majority notes, the specific allegations of sexual misconduct were not proven, but petitioner was found to have "demonstrated poor judgment and * * * engaged in unwise and inappropriate behavior" with two minors. Respondent was not required to review petitioner's assault conviction in a vacuum, and giving due regard to the sensitive nature of petitioner's profession and the duty placed on the Commissioner of Health to protect the public, it is our view that the penalty imposed was warranted by the record and not disproportionate to the offense. The determination should be confirmed in its entirety and the petition dismissed.

MAHONEY, P. J., and HARVEY, J., concur with CASEY, J.; WEISS, and MIKOLL, JJ., dissent and vote to confirm in an opinion by WEISS, J.

Determination modified, with costs to petitioner, by annulling so much thereof as imposed a penalty on petitioner; matter remitted to respondent for further proceedings not inconsistent herewith, and, as so modified, confirmed.