OPINION OF THE COURT
Lewis R. Friedman, J.
The City of New York and its Department of Sanitation have petitioned this court for an ex parte order authorizing an "administrative search” of the premises of a clinical laboratory which allegedly "generates medical waste material which *757 may include potentially infectious waste materials.” The proposed order permits "inspection” of storage areas and "red bags”, and "inspection” of certain documents, including those identifying "owners, managers, and employees”, those concerning the "storage, removal, or disposal of infectious waste” or "the number or origin of the specimens of human tissues, organs and fluids which were submitted to * * * [the laboratory] and upon which laboratory procedures and tests were performed * * * which created infectious waste.” The proposed order also authorizes the "seizure” of samples. Sanitation Department Police, "environmental police” and environmental counsel are authorized to be present. The order requires the laboratory to comply and directs it not to interfere with the "inspection and taking and removal of samples authorized by this order”. It further provides that "refusal to grant entry or the taking or removal of samples may be punishable by contempt and the person so refusing shall be brought before the court forthwith.”
The Supreme Court definitively held in 1967 that certain "administrative searches” may not be conducted without prior court approval. (Camara v Municipal Ct., 387 US 523 [1967]; See v City of Seattle, 387 US 541 [1967].) Petitioner has not drawn the court’s attention to any reported New York decisions discussing the rules applicable to "administrative search warrants” and what applicable standard should be used by the Justice to whom the applications are submitted. This proceeding, apparently part of an extensive, city-wide enforcement effort,* highlights many issues which are applicable in other circumstances.
Petitioners seek the order to enforce statutes which prevent the improper disposal of "infectious waste” in the city (e.g., Public Health Law §§ 1389-aa — 1389-gg; Administrative Code of City of New York § 16-120.1). The court is sympathetic to public health enforcement which seeks to avoid harm to residents of New York City and the surrounding area, all of whom may be endangered by improper disposal of "infectious wastes”. However, the nature of the proposed order and the extent of the proposed intrusion into the operations of the laboratory are far too extensive to pass constitutional muster. *758 The proposed ex parte order, which is a constitutionally condemned "general warrant” sought without probable cause, must be denied.
GENERAL PRINCIPLES
In Camara v Municipal Ct. (supra) the Supreme Court articulated the governing Federal constitutional principle that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable’ unless it has been authorized by a valid search warrant” (387 US, supra, at 528-529). The court delineated the standard for the issuance of warrants to carry out administrative, code enforcement, searches. Since a search of the residential premises constituted a significant intrusion on interests protected by the Fourth Amendment, a warrant was required; an expectation of privacy (Katz v United States, 389 US 347 [1967]) precludes even "administrative” governmental searches. The same day it decided Camara, the court extended the rule to private commercial premises. "The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant” (See v City of Seattle, 387 US, supra, at 543). Both See and Camara reiterated that warrantless searches were constitutionally prohibited during civil, as well as criminal, investigations. The Supreme Court has more recently reminded that "[i]f the government intrudes on a person’s property, the privacy interest suffers whether the government’s motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards” (Marshall v Barlow’s, Inc., 436 US 307, 312-313 [1978]; New York v Burger, 482 US 691, 699-700 [1987]).
The continuing vitality of Camara and See (supra) has recently been reinforced. Thus, the Supreme Cohrt has forcefully explained that the only exception to the warrant requirement was in pervasively regulated businesses in industries "long subject to close supervision and inspection” (Colonnade Corp. v United States, 397 US 72, 77, 74 [1970] [liquor dealers]; United States v Biswell, 406 US 311, 316 [1972] [firearms and ammunition dealers]; Donovan v Dewey, 452 US 594, 602 [1981] [coal mine operators]; New York v Burger, 482 US, supra, at 708 [vehicle dismantlers]). The court refused to extend the Colonnade-Biswell line of *759 cases to permit warrantless inspections under the Occupational Safety and Health Act of 1970 (OSHA) (29 USC § 657 [a]); "[t]he clear import of our cases is that the closely regulated industry of the type involved in Colonnade and Biswell is the exception” (Marshall v Barlow’s, Inc., 436 US, supra, at 313).
Thus, as recently as 1987, the Supreme Court has reiterated the requirement that, except for four industries, searches of commercial facilities can only be conducted with a warrant issued by a neutral Magistrate. This State has followed the Supreme Court and invalidated an ordinance that permitted searches of rental property without a warrant (Sokolov v Village of Freeport, 52 NY2d 341, 345-347). Indeed, the Court of Appeals held that vehicle dismantlers had a right to a warrant under the Camara-See test since the search was a general one of the premises (People v Burger, 67 NY2d 338, 343, revd sub nom. New York v Burger, supra).
The Supreme Court has taught that the detailed standard for the issuance of an "administrative” warrant is different from that for the issuance of a criminal search warrant. All warrants must comport with the Fourth Amendment’s requirement of "probable cause”; however, the court in issuing "administrative warrants” must "focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen” (Camara v Municipal Ct., 387 US, supra, at 534-535). The operative test is "balancing the need to search against the invasion which the search entails” (Camara v Municipal Ct., 387 US, supra, at 537). "The agency’s * * * demand for access will of course be measured, in terms of probable cause to issue a warrant, against a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved” (See v City of Seattle, 387 US, supra, at 545). Thus, the Supreme Court found that housing code compliance "area inspections” were reasonable because they had a long history; there is a public interest in abating dangerous conditions which requires interior inspection of the premises; and the searches "are neither personal in nature nor aimed at the discovery of evidence of crime” (Camara v Municipal Ct., 387 US, supra, at 537). An "administrative” warrant’s issuance is based on an over-all evaluation of "reasonableness”. The Court of Appeals has noted that the warrant requirement prevents "capricious” enforcement and will "prevent administrative inspections as a pretext for police *760 investigations” (Sokolov v Village of Freeport, 52 NY2d, supra, at 348).
THE ALLEGATIONS HERE
Petitioners contend that the nature of the business conducted by the laboratory and the likelihood that it may produce "infectious waste” form adequate predicates for an "administrative” search and seizure warrant. Petitioners assert that often "infectious waste” is improperly disposed of and that the inspection, pursuant to criminal search and seizure warrants, of three facilities, not including the one at issue here, has led to arrests, for unspecified crimes, and to issuance of violations of "the governing laws”. Petitioners further allege that surprise "is essential to the success of the administrative search since records may be tampered with or destroyed, the telltale absence of red bags and properly labeled containers may be readily remedied, and improperly stored waste materials may be removed for improper disposal or storage at another location.”
Under the Camara-See constitutional test of "reasonableness” the instant application is fatally flawed. The application here does not established that the medical laboratory industry is regulated to the degree that inspections to insure compliance with the "infectious waste” statutes, some of which became effective only in April 1988 (e.g., Public Health Law §§ 1389-aa — 1389-gg), are necessary. The factual allegations, reduced to their essentials, are that some "infectious wastes” have been improperly disposed of by some persons, who are not even alleged to have been legitimate clinical laboratories, such as the one here. It is significant that petitioners acknowledge that the laboratory to be searched was selected randomly from "an alphabetical list of non-hospital affiliated facilities which generate medical waste [which] was obtained from the New York State Department of Labor.” The first listed facility, and up to four others, in each "alphabet group” was selected. While random inspection prevents capricious searches, it provides no affirmative basis for the court to believe that enforcement is necessary at this laboratory.
There is no showing of a widespread need to conduct the wholesale police invasions of a laboratory sought here. The proposed ex parte order allows the "inspection” and seizure of nearly all the records in the laboratory. The use of police to enter to carry out the search does not, itself, invalidate the *761 "administrative” nature of the search (New York v Burger, 482 US, supra, at 717). The scope of the order, however, makes it clear that the purpose of the search is to seek evidence of criminality of those who improperly deal with "infectious waste”.
The search sought to be authorized here goes far beyond the reasonable goals of regulation. Additionally, it appears to seek to enforce laws that have not been enacted. Thus, petitioners show no statutory, or other, requirement that a laboratory keep records of the source and ultimate recipient of the waste and the names of all persons involved in the receipt and delivery of those wastes. Yet, the ex parte order permits the seizure of any such records, without further hearing.
Further, the order is unnecessarily intrusive since it is a self-enforcing equivalent of an arrest warrant. That is, it seeks to give the executing police officers authority to immediately remove to court any person who interferes with the execution. The "arrest” feature of the ex parte order is clearly not aimed at administrative enforcement. Nothing in even the broadest interpretation of the Camara-See line of cases purports to give such authority.
THE ABSENCE OF STATUTORY AUTHORITY
Petitioners point to no statutory authority for the "administrative inspections” they seek here. There are statutes that specifically authorize "administrative inspections” upon the presentation of an application to the court (e.g., Administrative Code § 27-2123). Even those sections may well have difficulty in withstanding constitutional muster (see, Matter of Department of Hous. Preservation & Dev. v Perlongo, 134 Misc 2d 722; Matter of Department of Hous. Preservation & Dev. v Cohen, 128 Misc 2d 351; cf., People v Rosenthal, 59 Misc 2d 565). The statutes at issue here do not specifically authorize application to the court for a warrant. There is authority holding that the omission from the legislative scheme of specific authority for such warrants precludes a court from proceeding. In Matter of Shankman v Axelrod (137 AD2d 255) the Third Department reviewed an "administrative search” order for certain patient records issued by Supreme Court on application of the Department of Health. The Department of Health has authority to issue administrative subpoenas for the same documents. The court found that the statutes evidenced a legislative intent that subpoenas be the only means *762 for obtaining a physician’s patient records; an ex parte "inspection warrant”, therefore, could not be issued by Supreme Court. Here, the statutes are silent as to the manner of administrative enforcement. Thus, this court’s inherent powers (Judiciary Law § 140-b; NY Const, art VI, § 7) may be sufficient to permit the creation of an appropriate remedy. Similar difficulty has divided the Federal courts whether ex parte warrants may be sought in OSHA cases, without specific regulatory authority (compare, Donovan v Red Star Mar. Servs., 739 F2d 774, 782-784 [2d Cir 1984]; Matter of Stoddard Lbr. Co. v Marshall, 627 F2d 984, 990 [9th Cir 1980], with Cerro Metal Prods, v Marshall, 467 F Supp 869 [ED Pa 1979], affd 620 F2d 964 [3d Cir 1980]; cf., Marshall v Northwest Orient Airlines, 574 F2d 119 [2d Cir 1978]).
This court might well find that it has the inherent power petitioners seek to invoke. But, where the application is constitutionally defective on its face, the court will not seek to extend its powers to issue such a warrant, even by removing the most egregious portions of the proposed order.
There is little doubt that adequate procedures can be adopted for the sought administrative investigations other than the ex parte orders sought here. For example, the courts have upheld, against constitutional attack, the right of New York City inspectors to enter the premises and to examine the records of licensed television and radio repair businesses without a warrant. In Matter of Glenwood TV v Ratner (103 AD2d 322, affd on opn below 65 NY2d 642, appeal dismissed 474 US 916), the court approved regulations which permitted regular, warrantless inspections of public areas of the facilities and of records which were required by statute to be maintained by licensees. The court emphasized that " 'required records’ ” are in the public domain (103 AD2d, supra, at 328). "[T]he modern businessman has little or no expectation of privacy in * * * business records * * * [which are] prepared in compliance with regulatory requirements” (Interstate Commerce Commn. v Gould, 629 F2d 847, 858, cert denied 449 US 1077). Regulations may validly require that records must be maintained and be available for inspection at reasonable business hours (see, e.g., Matter of Glenwood TV v Ratner, 103 AD2d, supra, at 329; United States ex rel. Terraciano v Montanye, 493 F2d 682, cert denied sub nom. Terraciano v Smith, 419 US 875; Matter of McKaba v Board of Regents, 30 AD2d 495). Such inspections on a routine, regular basis, tailored to reasonable goals and enforcement needs may be *763 sufficient to provide "a constitutionally adequate substitute for a warrant” (Donovan v Dewey, 452 US, supra, at 603; Matter of Glenwood TV v Ratner, 103 AD2d, supra, at 330; see, Flacke v Onondaga Landfill Sys., 127 Misc 2d 984, 994-996).
Similarly the Legislature could provide, as it has in other contexts, for administrative subpoenas duces tecum which may be used for enforcement purposes (e.g., Matter of Shankman v Axelrod, supra; Matter of Hynes v Moskowitz, 44 NY2d 383, appeal dismissed 439 US 921; Matter of Nicholson v State Commn. on Judicial Conduct, 50 NY2d 597, 610-611; Matter of A'Hearn v Committee on Unlawful Practice of Law, 23 NY2d 916). Such subpoenas, even if issued without prior court approval, do not run afoul of the Camara-See line of authority (Donovan v Lone Steer, 464 US 408, 414-416).
The Legislature, not the courts, must provide appropriate standards and guidance. Matters of judgment and allocation of resources are properly issues of general policy-making for the Legislature (Matter of Lorie C., 49 NY2d 161, 171; Flacke v Onondaga Landfill Sys., 127 Misc 2d, supra, at 996).
Of course, where the legislative scheme provides for inspection of required records or the issuance of administrative subpoenas, there must be judicial review of constitutional claims prior to any administrative enforcement for noncompliance (see, Matter of Friedman v Hi-Li Manor Home for Adults, 42 NY2d 408, 413; Matter of Hynes v Moskowitz, 44 NY2d, supra, at 394-395; Matter of Glenwood TV v Ratner, 103 AD2d, supra, at 329; Donovan v Dewey, 452 US, supra, at 605-606; cf., Matter of A. Gebbia, Inc. v City of New York, 106 AD2d 287). "Bifurcation of the power * * * of the public official to issue subpoenas duces tecum and * * * of the courts to enforce them, is an inherent protection against abuse of subpoena power” (Matter of Hynes v Moskowitz, 44 NY2d, supra, at 393).
CONCLUSION
The court finds the instant application to be a good-faith attempt to enforce laws which seek to prevent a substantial, serious public health problem. Yet, this court does not sit as a "rubber stamp” for administrators who seek to perform their duty in an expeditious, if not necessarily, constitutional form. "We do not believe, however, that the requirement of a warrant for an administrative inspection is a hollow one” (Sokolov v Village of Freeport, 52 NY2d, supra, at 348). The proposed order violates the rights of the laboratory.
*764 The court rejects petitioners’ counsel’s offer for it to restructure and excise the unconstitutional portions of the order in order to sign a valid ex parte order that accomplishes petitioners’ goals. Separation of powers precludes this court from advising the executive on how to make proper allegations or how to narrow the scope of its unauthorized intrusions into the laboratory’s rights. The court must dispense justice mindful of the rights of individuals as well as the rights of the community-at-large. The United States survival as a "nation under law” requires that the courts, as an independent branch of government, carefully protect against even well-intentioned executive encroachments on civil rights.
The application is denied.

 The application states that it is 1 of 26 to 130 identical applications contemplated. The court has been advised that 8 identical applications were recently granted in Queens County; 6 were granted, with minor modifications, in Kings County; and 3 are sub judice in New York County. Another application, submitted in this county, is also being denied.