■ Douglas Lackow, Respondent, v Department of Education (or "Board") of the City of New York et al., Appellants. [859 NYS2d 52]—

Order, Supreme Court, New York County (Marilyn Shafer, J.), entered January 30, 2007, which, to the extent appealed, granted the petition to the extent of vacating certain determinations of teacher misconduct and remanded for imposition of a lesser penalty than termination of employment, unanimously reversed, on the law, without costs, the determinations reinstated with respect to specifications III (c), (d), (g), (j), (k) and (l), the cross motion to dismiss granted, and the petition dismissed.

At issue in this matter, brought pursuant to CPLR 7511 and 7803 and Education Law § 3020-a (5), are Supreme Court's vacatur of findings of guilt on several specifications filed against the petitioner, Douglas Lackow, by respondent Department of Education of the City of New York (DOE) and its remand to the hearing officer for reconsideration of the penalty to be imposed by the DOE.

On December 3, 2004, petitioner, then employed by DOE as a tenured biology teacher, became the subject of an investigation of the Special Commissioner's Office for Investigation based on an incident in which a student reported to the assistant principal that she had yelled out "Lackow sucks," and petitioner responded, "No, you suck, well that's what it says in the boys' bathroom."

In response to this reported incident, a DOE Special Investigator interviewed the principal, assistant principal, seven students, a teacher and a teaching assistant. The investigation unearthed a number of complaints about petitioner's use of sexual innuendo in high school classes he taught, and the First Deputy Commissioner prepared a report concluding that the claims were substantiated and that termination was proper. In

or about February 2005, petitioner was removed from the classroom and reassigned to a DOE facility in Staten Island.

On or about April 19, 2005, DOE preferred disciplinary charges, pursuant to Education Law § 3020-a, consisting of 16 specifications. DOE alleged that petitioner had "engaged in insubordination, sexual harassment, used inappropriate language and engaged in conduct unbecoming a teacher." A compulsory arbitration hearing was held pursuant to Education Law § 3020-a. Five of the specifications were withdrawn before the hearing and two were dismissed by the hearing officer in a decision dated February 24, 2006. The remaining nine specifications were sustained, and a penalty of discharge was imposed.

Petitioner commenced this proceeding seeking vacatur of the hearing officer's findings or, in the alternative, a penalty short of termination. DOE cross-moved to dismiss the proceeding and to confirm the arbitration determination. Supreme Court vacated six of the specifications, sustained three others, and remanded the matter to the hearing officer to reconsider the penalty because it found the penalty of dismissal so disproportionate to petitioner's conduct as to shock the court's sense of fairness and constitute an abuse of discretion. We reverse, reinstate the hearing officer's findings and recommended penalty, and grant the cross motion to dismiss the petition and confirm the determination.

Initially, as noted, three of the specifications sustained by the hearing officer were not vacated by the court. The first was specification I (a), which alleged that petitioner had made a comment about the color of a student's underwear. In specification II, petitioner was charged with saying, in response to a female student's comment that "[petitioner sucks]," "No, you suck, well that's what it says in the boys' bathroom." The third charge, specification III (a), alleged that, while teaching with a model of female reproductive organs, petitioner said to a male student words to the effect "that [the student] would never see one, so enjoy it, referring to a woman's vagina." Although the court did not disturb those findings, it concluded that, within the context in which each of these comments was made, the language, while inappropriate, did not justify the penalty of dismissal, which the court found to be disproportionate to the offenses and shocking to its sense of fairness.

The six other specifications that the hearing officer sustained, but which the court vacated, reflect a similar pattern of inappropriate comments. In specification III (c), petitioner was charged with saying to a student words to the effect "I don't want to hear stories of you with your legs up in the air." The

court found that the comment was made in the context of a reprimand to a female student who was describing to a fellow student how "[a] boy put my legs in the air like this" and, then, for dramatic effect, actually lifted her legs up over her desk and then into the air. The court concluded that under the circumstances the comment did not constitute language or behavior unbecoming a teacher without explaining why the language used by petitioner was appropriate, especially when he was admonishing a teenage girl.

In specification III (d), petitioner was charged with saying, in the course of a conversation about masturbation, words to the effect "that there are some people in this class that would never leave their rooms." The court found that the comment did not constitute language unbecoming a teacher since it was made during a classroom discussion of safe sex, and observed that petitioner testified that he had actually said, "there are people who will misunderstand this information and they may not leave the house." The court's acceptance of petitioner's explanation that this was a harmless joke is inconsistent with the repetitive pattern of petitioner's sexually-laced comments to a gathering of impressionable adolescents.

Specification III (g) charged petitioner with talking to students about how many times he ejaculates. In vacating the finding of guilt with regard to this specification, the court found that there was no evidentiary support for the hearing examiner's conclusion, despite the testimony of a paraprofessional that she heard petitioner discuss the number of times he ejaculated while masturbating.

In specification III (j), petitioner was charged with talking to the students about having sex with animals. Petitioner testified that, in a class on human sexual reproduction, one of the students asked if sex between an animal and a human being would result in a "half animal, half human." As a result, petitioner testified, he entered into a discussion of bestiality, "a sexual disorder in which people want to have sex with animals." He claimed that the exchange was limited to the scientific aspects of the process and the genetic consequences of such intercourse. The court found that this colloquy did not constitute conduct unbecoming a teacher, without elaborating on how the subject of, as the court phrased it, "cross-fertilization" can also properly encompass a discussion of bestiality. The court also ignored testimony that petitioner was overheard saying "animals don't enjoy having sex and that's why they make strange noises."

Specification III (k) charged petitioner with talking to

students about necrophilia. Petitioner testified that he discussed that subject only in response to students' questions. The hearing officer rejected petitioner's explanation, stating that the "suggest[ion] that discussion[ ] on [the] subject[ ] [of] necrophilia . . . [was an] appropriate or legitimate subject[ ] of discussion is beyond comprehension." The court, however, found that the "only" evidence supporting this specification was testimony from a teacher that she overheard petitioner telling a group of students about a man who was arrested for having sex with a dead body in the morgue of an upstate college town. That "only" one witness provided testimony supporting this specification was an insufficient basis upon which to disturb the findings of the hearing officer; the testimony provided a rational basis for the hearing officer's conclusion that petitioner discussed the subject and that the discussion was inappropriate.

In the last charge, specification III (l), petitioner was charged with talking to students about women having multiple orgasms. The court vacated the finding of guilt, observing that petitioner testified that the issue was raised by a student during a discussion of the male and female reproductive systems. When the student queried as to why men cannot have multiple orgasms, petitioner claimed that he explained the biological reasons, i.e., that a certain period of time is required for the production of male sperm after ejaculation. In vacating the finding the court stated, "[DOE] has shown no rational basis for why class discussion of orgasm and ejaculation constitutes language unbecoming a school teacher in the context of instruction on human sexual reproduction." Yet, as the assistant principal testified, the course was designed to prepare students for the Regents biology exam, with limited material on human reproduction.

Education Law § 3020-a (5) provides that judicial review of a hearing officer's findings must be conducted pursuant to CPLR 7511. Under such review an award may only be vacated on a showing of "misconduct, bias, excess of power or procedural defects" (*Austin v Board of Educ. of City School Dist. of City of N.Y.*, 280 AD2d 365, 365 [2001]). Nevertheless, where the parties have submitted to compulsory arbitration, judicial scrutiny is stricter than that for a determination rendered where the parties have submitted to voluntary arbitration (*see Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 223 [1996]; *Cigna Prop. & Cas. v Liberty Mut. Ins. Co.*, 12 AD3d 198, 199 [2004]). The determination must be in accord with due process and supported by adequate evidence, and must also be rational and satisfy the arbitrary and capricious standards of CPLR article 78 (*Motor Veh. Mfrs. Assn. of U.S. v State*

*of New York*, 75 NY2d 175, 186 [1990]). The party challenging an arbitration determination has the burden of showing its invalidity (*Caso v Coffey*, 41 NY2d 153, 159 [1976]).

Here, the record is clear that petitioner made the statements alleged in the specifications. Although the court found that some of the statements were contextually inoffensive, that is not a proper basis for vacating the findings that they had been made. Petitioner was charged with making the statements, and the record supports the hearing officer's conclusions that he made them. Whether the making of the statements, individually or in the aggregate, justified petitioner's removal is a separate issue.

Not only did the court err in seeking to find justifications for the statements, in at least one instance it paid no heed to highly relevant testimony. The court found that petitioner did not make the statement concerning the number of times he ejaculated by referencing one witness's testimony, but apparently overlooked the testimony of another witness clearly stating that she heard him discussing his ejaculations.

Moreover, the court suggested that some of the students were disciplinary problems, and thus their credibility was suspect. A hearing officer's determinations of credibility, however, are largely unreviewable because the hearing officer observed the witnesses and was "able to perceive the inflections, the pauses, the glances and gestures—all the nuances of speech and manner that combine to form an impression of either candor or deception" (*Matter of Berenhaus v Ward*, 70 NY2d 436, 443 [1987]). The record does not support the inference that the witnesses upon whose testimony the hearing officer relied were incredible as a matter of law. Thus, it was improper for the court to credit petitioner's testimony to the exclusion of the accounts given by the other witnesses.

Furthermore, petitioner was teaching a biology class, and was not a student counselor empowered to give advice on teenage sexuality. That certain questions would arise in a biology class that had some relationship to the course but were not part of the curriculum is understandable. However, petitioner had been warned by his assistant principal in conversations and writing about the inappropriateness of his behavior on at least three prior occasions. His choice of language, in any event, is inexcusable. Petitioner's argument that he had not been warned of the possibility of dismissal rings hollow. Even without a warning about the possibility of dismissal, certain conduct, such as petitioner's, is clearly unacceptable. Moreover, being admonished not to repeat prior behavior patterns was sufficient warning.

The standard for reviewing a penalty imposed after a hearing pursuant to Education Law § 3020-a is whether the punishment of dismissal was so disproportionate to the offenses as to be shocking to the court's sense of fairness (*Matter of Harris v Mechanicville Cent. School Dist.*, 45 NY2d 279, 285 [1978]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222 [1974]).

In view of petitioner's proven misconduct, and that he had three times been previously warned in writing about the inappropriateness of his behavior, the penalty of dismissal does not shock the conscience. Of particular concern is the repetitive nature of petitioner's misconduct. Petitioner continued in a pattern of conduct that was clearly irresponsible and inappropriate within the classroom setting. Discussing his own ejaculations, admonishing a student about putting her legs in the air, telling another student that he should take a good look at a diagram of a woman's vagina because he will not see one otherwise, talking about the color of a student's underwear, and responding to a student's inappropriate comment by remarking about seeing her name on bathroom walls, constitute more than isolated, aberrant behavior. Rather, such conduct is indicative of a continued pattern of offensive behavior that reflect an inability to understand the necessary separation between a teacher and his students. Concur—Friedman, J.P., Gonzalez, McGuire and Moskowitz, JJ.