■ In the Matter of KEITH DOUGLAS, Appellant, v NEW YORK CITY BOARD/DEPARTMENT OF EDUCATION, Respondent. [929 NYS2d 127]—

The gravamen of petitioner's argument is that the testimonies of the students were incredible as a matter of law due to inconsistencies the Hearing Officer ignored. Contrary to petitioner's contention, however, the Hearing Officer carefully considered all of the testimony and resolved any inconsistencies in favor of the students, as she was entitled to do (*see Lackow v Department of Educ. [or "Board"] of City of N.Y.*, 51 AD3d 563, 568 [2008]). Petitioner offers no basis for disturbing those findings that relied not only upon a finding that the students were credible, but also upon a finding that petitioner's testimony was not credible (*see Matter of Mercado v Kelly*, 54 AD3d 654, 655 [2008]).

The dissent's view that specification III is not supported by adequate evidence is unfounded. Although another student did confirm that petitioner told student D to sit up in class because she was slouching in her chair, that other student did not confirm petitioner's version of the events either. The Hearing Officer, who heard the actual testimony from the witnesses, was entitled to weigh the testimony and make independent findings (*see Matter of D'Augusta v Bratton*, 259 AD2d 287, 288 [1999] ["(t)o the extent that petitioner presented a different account of the events, we note that credibility determinations are the province of the Hearing Officer"]).

The penalty of termination does not shock our sense of fairness. Petitioner's unacceptable behavior compromised his ability to function as a teacher and the school's position in the community. Further, "[a]cts of moral turpitude committed in the course of public employment are an appropriate ground for termination of even long-standing employees with good work histories" (*Matter of Chaplin v New York City Dept. of Educ.*, 48 AD3d 226, 227 [2008]).

We have considered petitioner's remaining arguments, including that the arbitration hearing was not in accord with due process, and find them unavailing. Concur—Sweeny, Moskowitz, Renwick and Richter, JJ.

Andrias, J.P., dissents in a memorandum as follows: Because I believe that specification III is not supported by adequate evidence and must be vacated, I would remand the matter to the

Department of Education for reconsideration of the penalty of termination imposed on petitioner, which was not mandatory or warranted in this case.

Petitioner is charged with conduct unbecoming a teacher. Specification I alleges that on May 14, 2007, he asked student A whether she liked anyone or had a boyfriend; told her that she was dressing sexy lately; asked her to touch her breast and demonstrated how he wanted her to do that; and touched his genitals in front of her. Specification II alleges that on February 14, 2007, petitioner simulated a woman's breast with a balloon, which he squeezed while stating words to the effect that "we got some chemistry going on," and that student D had "sweet stuff." Specification III alleges that on May 17, 2007, petitioner said to student D words to the effect that the way she sat in class was sexy and turned him on. The Hearing Officer sustained specification I (except to the extent it was based on the allegation that petitioner asked student A if she liked anyone) and specification III, and dismissed specification II.

Education Law § 3020-a (5) provides that judicial review of a hearing officer's findings must be conducted pursuant to CPLR 7511. However, where, as here, the parties are subjected to compulsory arbitration, judicial scrutiny is greater than when parties voluntarily arbitrate and "[t]he determination must be in accord with due process and supported by adequate evidence, and must also be rational and satisfy the arbitrary and capricious standards of CPLR article 78" (*Lackow v Department of Educ. [or "Board"] of City of N.Y.*, 51 AD3d 563, 567 [2008]). The Court of Appeals has defined arbitrary and capricious as "action . . . without sound basis in reason and . . . generally taken without regard to the facts" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

As respondent concedes, the Hearing Officer correctly dismissed specification II based on the long delay in reporting the alleged incident, the inconsistencies in the evidence, and the fact that none of the other students in the lab class confirmed that the incident occurred. While student D was identified in the specification and bill of particulars as the person to whom petitioner's actions were directed, she in fact had no firsthand knowledge of the incident, and testified that the conduct was directed at student C, who told her about it after class.

Once the Hearing Officer dismissed specification II based in part on student D's admission that her statements to an investigator employed by the Special Commissioner of Investigation for the New York City School District and to the school's

principal that she was the victim of the conduct underlying specification II were false, the evidence was inadequate to sustain specification III. Student D's material false statements as to specification II rendered her testimony as to specification III incredible. While I am cognizant that the "maxim [of] falsus in uno falsus in omnibus" is permissive, not mandatory (*see People v Barrett*, 14 AD3d 369, 369 [2005], quoting *People v Becker*, 215 NY 126, 144 [1915]), as with specification II, student D's testimony was not corroborated by any of the other students in the class that the investigator questioned, and the one student who was called as a witness at the hearing testified that petitioner told student D to sit up in class because she was slouching in her chair.

Because specification III should have been dismissed, the matter should be remanded for the imposition of a new penalty.

Education Law § 3020-a (4) (a) provides, in relevant part: "The written decision shall include the hearing officer's findings of fact on each charge, his or her conclusions with regard to each charge based on said findings and shall state what penalty or other action, if any, shall be taken by the employing board . . . In those cases where a penalty is imposed, such penalty may be a written reprimand, a fine, suspension for a fixed time without pay, or dismissal. In addition to or in lieu of the aforementioned penalties, the hearing officer, where he or she deems appropriate, may impose upon the employee remedial action including but not limited to leaves of absence with or without pay, continuing education and/or study, a requirement that the employee seek counseling or medical treatment or that the employee engage in any other remedial or combination of remedial actions."

Where a punishment has been imposed, the test is "whether such punishment is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" (*Matter of Pell*, 34 NY2d at 233 [internal quotation marks omitted]). A sanction is shocking to one's sense of fairness if it "is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution" (*id.* at 234).

Here, petitioner is being punished as if he were involved in a course of repetitive conduct when in fact the Hearing Officer dismissed specification II and should have dismissed specification III, which was not corroborated by any other student present and was based solely on the allegations of the discredited complaining witness who had lied about specification II (*compare*

*Lackow v Department of Educ. [or "Board"] of City of N.Y.*, 51 AD3d 563, 569 [2008], *supra* [based on the prior warnings and the repetitive nature of the teacher's conduct, the penalty of dismissal was not so disproportionate as to shock the conscience]; *Matter of Watt v E. Greenbush Cent. School Dist.*, 85 AD3d 1357, 1359 [3d Dept 2011] [termination was not shocking or disproportionate where the petitioner's disciplinary record included several prior situations where he was warned or disciplined for making inappropriate comments to students]).

Accepting that petitioner is guilty of specification I, there was no evidence of pressure or physical contact. Unlike *Lackow* and *Watt*, petitioner, a tenured teacher, has a 17-year unblemished record and has always received satisfactory evaluations. In addition to teaching chemistry, he served as a college advisor and taught honors classes, as well as the DaVinci program, involved herein. Petitioner also assisted students with the Intel science competition, coordinated Cardozo's science fair, supervised the chemistry Regents exams and hosted Cardozo's annual DaVinci open house, seeking to recruit honor students to the school. Petitioner's principal and assistant principal noted that petitioner was an "asset, not only to this [chemistry] department, but also to this school." Given these circumstances, the penalty of termination shocks the conscience (*compare City School Dist. of the City of N.Y. v McGraham*, 75 AD3d 445 [2010] [penalty of 90-day suspension without pay and reassignment to a different school was reinstated where a female teacher had engaged in ongoing inappropriate behavior with a male student], *mot to dismiss appeal denied* 16 NY3d 735 [2011]; *Nreu v New York City Dept. of Educ.*, 25 Misc 3d 1209[A], 2009 NY Slip Op 52007[U] [2009] [one-year suspension was upheld where a male teacher engaged in ongoing inappropriate behavior with a female student]).

Lastly, while I am constrained to agree that, giving deference to the Hearing Officer's credibility determinations vis-à-vis student A and petitioner, specification I must be sustained, I note that the evidence is weak. The complaining witness had a motive to lie and to seek retribution. Petitioner had told her she was at risk of being dismissed from the chemistry honors (DaVinci) program. There was no independent evidence that the incident occurred, although it is alleged to have taken place in an open, public area with students and faculty constantly going in and out. One witness, Ms. Rita Falkenstein, a biology lab specialist, came into the chemistry lab area where petitioner was tutoring student A and sat at the same table with them for a long period of time. Testimony from her and other individuals

who were present during this tutoring session failed to corroborate anything that would raise any suspicions that anything out of the ordinary had occurred. While corroboration is not required, the lack of it here is particularly troubling. As to the sequence of events, the complaining witness told two diametrically different versions—at one point saying the petitioner rubbed himself while he made his offending comments and at another point saying that he rubbed himself sometime later when the session was about to end.