■ Matter of CHRISTOPHER ASCH, Respondent, v NEW YORK CITY BOARD/DEPARTMENT OF EDUCATION, Appellant. [960 NYS2d 106]—

Judgment, Supreme Court, New York County (Manuel J. Mendez, J.), entered July 21, 2011, which granted the petition to vacate an arbitration award ordering petitioner suspended without pay for six months, restored petitioner's employment status with back pay, and denied respondent Department of Education's cross motion to dismiss the petition, unanimously reversed, on the law, without costs, the petition denied, the cross motion granted, and the arbitration award reinstated.

Petitioner is a tenured school librarian/media specialist with over 20 years of service. His record was unblemished until charges were filed against him by respondent Department of

Education (DOE) in 2008 as the result of two separate investigations into incidents alleged to have occurred during school years 2005/2006, 2006/2007 and 2007/2008. The first investigation involved allegations of petitioner's failure to obtain proper school or parental permission before taking students on a field trip to Boston. The second investigation involved claims that he inappropriately touched several students.

At the conclusion of these investigations, petitioner was charged with nine specifications. Seven alleged that petitioner inappropriately touched several male students by rubbing their backs, shoulders and spines; whispering into one student's ear; striking two male students on the buttocks with a rolled up newspaper; running his fingers through a student's hair; grabbing and squeezing another male student's stomach after being told "[d]on't [t]ouch [m]e"; and lifting and rubbing the leg of a male student while saying words to the effect of "Insert foot! Open mouth." The two remaining specifications charged that he took seven students on a trip to Boston without proper school or parental permission.

A disciplinary hearing was held pursuant to Education Law § 3020-a (3). It was conducted over a period of 12 days from November 23, 2009 through April 2010. The relevant hearing testimony revealed the following:

Assistant Principal Eric Grossman testified that in February 2008, he was approached by student I.F., who told him that petitioner had "been touching the students in a way that made them feel uncomfortable for some time." I.F. showed Grossman a sheet of paper with several emails that had been cut and pasted as corroboration of these allegations. Grossman admitted that he did not request to see the original documents. Significantly, Grossman testified that I.F. did not appear to be vindictive toward petitioner in reporting these allegations. Grossman took the paper to Principal Stanley Teitel and gave him a verbal account of his conversation with I.F.

I.F., now graduated, testified that starting in the 2005/2006 school year, he noticed that petitioner, in order to get a noisy student's attention in the library, would rub his hands over the student's back in a circular motion, stroke the student's hair or run two fingers down the student's back. He didn't initially think anything of it until he saw petitioner standing behind and stroking student M.M.'s hair. M.M., who was playing a video game, was apparently not aware of petitioner's actions on this occasion. I.F. further testified that in December 2007, he saw petitioner coming toward him and said, "Don't touch me." According to I.F., petitioner smiled at him and reached down and

squeezed I.F.'s belly. While he was disturbed over this incident, I.F. did not report it, stating it was his senior year and he thought he could "st[i]ck it out."

Finally, I.F. stated that on Super Tuesday, 2008, he, F.N. and R.H. were having a political discussion in the back of the library. F.N. made a "politically incorrect" comment and petitioner grabbed F.N.'s leg, "lifted it up and sort of rubbed it up and down while saying open mouth, insert foot." I.F. then went about soliciting email recollections from other students about any inappropriate touching involving petitioner and turned them over to Assistant Principal Grossman. He also stated that some students he approached requesting information about any touching incidents involving petitioner refused to provide any information and were hostile to his requests.

M.M. testified that over three years at the school, petitioner touched him inappropriately approximately once every other week, but he did not report the incidents until I.F. asked him to write up a statement. M.M. stated he did not know who to go to about the incidents and was very uncomfortable with it. Several other students testified concerning petitioner's actions, none of which were reported prior to I.F.'s requests for emails.

Petitioner called a number of former students to testify, all of whom stated that any touching by petitioner was not viewed as sexual by them or made them feel uncomfortable. He also called Delisa Brown-Guc, another librarian who worked at the school. She testified that when she needed students to be quiet, she would walk over to them, smile, sometimes put her hand on their forearm and sometimes lean over and speak quietly to them. Significantly, she also stated that she never touched a student's hair, squeezed a student's shoulder, or ran her fingers down a student's spine. She further stated that such conduct is inappropriate and, had she seen it, would have reported it immediately to school supervisors.

Petitioner testified in his own behalf. He stated that, because of the configuration of the computers in the library, standing behind a student was often the only way to get that student's attention. He stated that he would try various methods of getting a noisy student's attention, such as trying to catch their eye, stand behind them and whisper or speak softly to them, tap them on the shoulder or, if that did not work, "give them a little squeeze on the shoulder." He also acknowledged that if that failed to get the student's attention, "I might run my finger a little bit down their" necks, (demonstrating this technique on his counsel). He denied touching any student's hair as well as striking any student with a rolled up newspaper. He also denied squeezing I.F.'s stomach.

With respect to the Super Tuesday incident, petitioner testified that F.N. and several other students were sitting on the floor "having a picnic" and being very loud. He told them, in a "friendly exchange" to lower their voices and put the food away. He recalled F.N. saying something that sounded like an admission that he had been eating. Another student said "why don't you put your foot in your mouth, and so I [petitioner] grabbed his ankle and I attempted to try to put his foot in his mouth and I said open mouth, insert foot, chew well." Petitioner stated everyone laughed except I.F., who said, "[T]hat's creepy."

With respect to the Boston trip, petitioner admitted that he was told by D.Y.'s mother that D.Y. did not have permission to go with the Quiz Bowl club to Boston. When D.Y. appeared in Boston and stated that he had obtained his parents' permission to attend the tournament, petitioner did not contact the parents of D.Y. either to verify D.Y.'s story or to let them know he was in Boston.

The hearing officer found that petitioner was not involved in sexual misconduct, and dismissed the specifications alleging that he struck two students on the buttocks with a rolled up newspaper and squeezed I.F.'s stomach. Stating "this case is about boundaries," the hearing officer sustained all or parts of the remaining specifications charging inappropriate touching. Regarding the Boston trip, the hearing officer found that, although petitioner was a last minute substitute for a parent-chaperone, he was still under a duty to obtain appropriate parental consent and to call D.Y.'s parents to ensure that he had permission to attend the tournament.

Rejecting DOE's recommendation of termination, the hearing officer concluded that a six-month suspension without pay and mandatory counseling and/or training regarding appropriate physical boundaries between petitioner and students was an appropriate penalty, given petitioner's long record of employment, lack of prior disciplinary history and the likelihood that petitioner's inappropriate behavior would be corrected.

Our analysis begins with a review of well-established principles. Education Law § 3020-a (5) provides that judicial review of a hearing officer's findings must be conducted pursuant to CPLR 7511. A hearing officer's determination may only be vacated on a showing of "misconduct, bias, excess of power or procedural defects" (*Austin v Board of Educ. of City School Dist. of City of N.Y.*, 280 AD2d 365, 365 [1st Dept 2001]). However, "where the parties have submitted to compulsory arbitration, judicial scrutiny is stricter than that for a determination rendered where the parties have submitted to voluntary

arbitration" (*Lackow v Department of Educ. [or "Board"] of City of N.Y.*, 51 AD3d 563, 567 [1st Dept 2008]). Because the arbitration at issue was compulsory, "[t]he determination must be in accord with due process and supported by adequate evidence, and must also be rational and satisfy the arbitrary and capricious standards of CPLR article 78" (*id.*). The party challenging an arbitration determination has the burden of showing its invalidity (*Caso v Coffey*, 41 NY2d 153, 159 [1976]).

Moreover, "[a]rbitration awards may not be vacated even if the court concludes that the arbitrator's interpretation of the agreement misconstrues or disregards its plain meaning or misapplies substantive rules of law, unless it is violative of a strong public policy, is totally irrational, or exceeds a specifically enumerated limitation on his power" (*Matter of Wicks Constr. [Green]*, 295 AD2d 527, 528 [2d Dept 2002]).

A "court's authority to overturn an arbitration award on public policy grounds is considered a narrow exception to the general rule that arbitrators have broad power to determine all disputes submitted to them pursuant to the parties' agreement" (*Board of Educ. of City of N.Y. v Hershkowitz*, 308 AD2d 334, 336 [1st Dept 2003], *lv dismissed* 2 NY3d 759 [2004]). To invoke this exception, a reviewing court must be able to examine an arbitration award on its face, and conclude that public policy considerations, embodied in either statute or decisional law, prohibit (1) arbitration on the particular matters to be decided, or (2) certain relief granted (*id.*).

Applying these principles to the facts of this case, we discern no basis on which the motion court should have disturbed the hearing officer's determination.

It is beyond question that Executive Law § 296 (1) (a) prohibits discrimination based upon "age, race, creed, color, national origin [or] sexual orientation." The motion court determined that the hearing officer "may not have intended to discriminate against the petitioner, [an openly gay male,] but the opinion and award has that effect." This determination was based upon the erroneous conclusion by the motion court that petitioner's conduct was "the same as the heterosexual female librarian" who was not disciplined for such conduct. The flaw in this reasoning, however, is that there is absolutely nothing in the record to support this conclusion. While it is true that all three librarians testified that they would use similar techniques to get a noisy student's attentions (e.g., stand next to or whisper to the student and in extreme cases touch the student's shoulder or forearm), the female librarians categorically denied ever squeezing a student's shoulder, touching a student's hair, or

running their finger down a student's spine. In fact, as noted, one of the female librarians testified unequivocally that such conduct is not only inappropriate but would be something she would immediately report to school administrators. Petitioner testified that he did, on a number of occasions, squeeze a student's shoulder or run his finger down a student's spine to get the student's attention, demonstrating the latter technique at the hearing. Moreover, the testimony of some of the witnesses confirmed that petitioner was the only librarian who engaged in this latter type of conduct.

We also note that, despite petitioner's contention, the record is devoid of any anti-gay animus on the part of the witnesses called by respondent. The hearing officer specifically found that petitioner's inappropriate touching of the students was of a non-sexual nature and involved a question of crossing "boundaries." While it is true that I.F. was alleged to have used an anti-gay slur, Assistant Principal Grossman testified that he did not demonstrate any vindictive motive in reporting what he believed was inappropriate touching. In fact, some of the students testified that the touching made them uncomfortable while others were not offended by it.

In short, the record is completely devoid of any indicia that either the charges or the penalty imposed were motivated in whole or in part by petitioner's sexual orientation. As a result, the motion court improperly substituted its judgment for that of the hearing officer and thus erroneously applied the narrow public policy exception to invalidate the hearing officers' determination (*see City School Dist. of the City of N.Y. v McGraham*, 75 AD3d 445, 450 [1st Dept 2010], *affd* 17 NY3d 917 [2011]).

We also reject the motion court's finding that the hearing officer demonstrated bias, whether intentional or not, in evaluating the testimony and credibility of the witnesses who testified at the hearing.

"A hearing officer's determinations of credibility . . . are largely unreviewable because the hearing officer observed the witnesses and was 'able to perceive the inflections, the pauses, the glances and gestures—all the nuances of speech and manner that combine to form an impression of either candor or deception' " (*Lackow v Department of Educ. [or "Board"] of City of N.Y.*, 51 AD3d at 568, quoting *Matter of Berenhaus v Ward*, 70 NY2d 436, 443 [1987]).

Here, the hearing officer's decision demonstrates that he carefully weighed the evidence presented by both parties. He certainly did not accept all of respondent's evidence and testimony at face value. In fact, several specifications were

dismissed either in whole or in part, including I.F.'s claim that petitioner squeezed his belly after being told by I.F. not to touch him, as well as the specifications that petitioner struck two students with rolled up newspapers. By the same token, the record contains sufficient credible evidence to support the specifications that the hearing officer did sustain. The record as a whole simply does not support the inference that the witnesses upon whose testimony the hearing officer relied were incredible as a matter of law or that their testimony was animated by bias. Indeed, "where reasonable men might differ as to whether the testimony of one witness should be accepted or the testimony of another be rejected" or "where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the [administrative agency]" (*Berenhaus* at 443-444 [internal quotation marks omitted]). It was therefore improper for the motion court to substitute its view of the credibility of the witnesses for that of the hearing officer (*Lackow*, 51 AD3d at 568).

Finally, we decline to disturb the penalty imposed by the hearing officer. In reviewing a disciplinary penalty under Education Law § 3020-a, a court must consider whether the penalty imposed is "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974] [internal quotations marks omitted]; *see* 51 AD3d at 569).

The record clearly demonstrates that the hearing officer carefully took into account the seriousness of the charges, as well as petitioner's lack of prior disciplinary history during his 20-year career with the DOE and the likelihood that petitioner would correct his inappropriate behavior. Having seen and heard the witnesses, he was in a far superior position than the motion court to make a determination as to an appropriate penalty to impose (*see City School Dist. of the City of N.Y. v McGraham*, 75 AD3d at 452; *Whitten v Martinez*, 24 AD3d 285, 286 [1st Dept 2005]). Thus, it cannot be said that, under all of the circumstances here, the penalty imposed is either shocking to the conscience or arbitrary and capricious as petitioner contends (*see Batyreva v N.Y.C. Dept. of Educ.*, 95 AD3d 792, 793 [1st Dept 2012]; *Cipollaro v New York City Dept. of Educ.*, 83 AD3d 543, 544 [1st Dept 2011]). Concur—Mazzarelli, J.P., Sweeny, Moskowitz, Renwick and Freedman, JJ. **[Prior Case History: 32 Misc 3d 886.]**