■ In the Matter of ANTHONY J. RUSSO, Appellant, v NEW YORK CITY DEPARTMENT OF EDUCATION, Respondent. [989 NYS2d 475]—

Order, Supreme Court, New York County (Geoffrey D. Wright, J.), entered January 14, 2013, which, in this proceeding pursuant to Education Law § 3020-a (5) and CPLR 7511, to vacate an arbitration award finding petitioner guilty of incompetence and imposing a penalty of termination, denied the petition and granted respondent's cross motion to dismiss the petition, modified, on the law, to deny the cross motion, and to grant the petition to the extent of remanding the matter to respondent, New York City Department of Education (DOE), for imposition of a lesser penalty, and otherwise affirmed, without costs.

Petitioner was a licensed common branches and special education teacher and had been employed as such by respondent for more than 21 years when he was terminated in 2011. In 2005, he was assigned to PS/IS 377 in Brooklyn. He received satisfactory ratings at that school for three years, as he had in his

previous years as a teacher. In 2008-2009, petitioner was assigned to a self-contained special education class comprised of 12 students who were chronologically fourth, fifth, sixth, graders, but who were functioning at two and three years below grade level.

After 18 years of satisfactory ratings, in 2009, the principal of the school rated petitioner unsatisfactory. Petitioner asked to either be assigned to another class or be assigned an aide or assistant, as was the usual practice for classes of special education students, but neither request was granted. Petitioner was assigned the same class with the same group of students for three consecutive years, until the older students completed the eighth grade. Petitioner was rated as unsatisfactory all three years he taught this class based in part on his inability to control the classroom and his inability to plan and effectively execute certain lessons. While petitioner's requests to be assigned to a different class were repeatedly denied, various teachers and administrators purported to advise him as to how to improve his performance.

At the disciplinary hearing, petitioner's principal and several other witnesses testified as to petitioner's deficiencies in preparing his classroom, planning and implementing the curriculum, and managing the unruly students. Included among the specified charges were allowing students to eat in the classroom, not adequately controlling disruptive behavior, and not engaging all of the students in the prescribed curriculum. Petitioner was criticized for failing to follow the Teacher's College Workshop Model lessons, even though the Workshop Model made no provisions for students with learning disabilities.

The Hearing Officer determined that petitioner was guilty of seven out of nine of the specified charges spanning a three-year period. While the Hearing Officer acknowledged that petitioner had attempted to improve his performance by working with a mentor and participating in the Peer Intervention Plus Program (PIP Plus), which involved the assignment of an impartial teacher to assist petitioner, the Hearing Officer deemed petitioner's performance to be unsatisfactory.

Petitioner avers that the remediation efforts were inadequate in that he never received organized or consistent lessons from his peers and that they usually consisted of rushed, disorganized, and informal hallway meetings. Petitioner also contends that the assistance he received from the assistant principals was uncoordinated and often contradictory. In one instance petitioner sought help designing a lesson from one assistant principal but when a different assistant principal observed the

lesson that the first assistant principal had prepared with petitioner, the second one rated it as unsatisfactory because the lesson failed to follow a specific structure established by written guidelines.

Petitioner also contends that the PIP Plus program was conducted in a haphazard and undirected manner, giving him little opportunity to improve his performance. Although the PIP Plus professional concluded that petitioner's performance was unsatisfactory in the core instructional responsibilities, the professional acknowledged that it was his first assignment as a PIP Plus consultant. It was also his first time testifying. According to petitioner, the consultant also testified that he had never held any supervisory position, failed to follow PIP Plus protocols, and failed to inquire as to what resources were available at the school to help petitioner. Despite the limited guidance that petitioner received through the program, the consultant testified and the Hearing Officer found that petitioner made progress in several areas, including reducing behavioral problems in the classroom.

Petitioner further argues that his unblemished 18 years as a teacher prior to the assignment at issue should have been considered. Petitioner points out that he did not begin receiving unsatisfactory evaluations until he was assigned the same special needs class starting in 2008 for three consecutive years.

While we do not dispute the specific findings of the Hearing Officer concerning petitioner's deficiencies in the management of this one special education class, we find that under the circumstances presented here the penalty of termination shocks our sense of fairness (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 234 [1974]).

While the dissent finds that petitioner had a "long-term pattern of inadequate performance," that "pattern" involves the same class from which petitioner sought a transfer. In actuality, petitioner had a lengthy unblemished record prior to being assigned that class, which consisted of students at their most difficult age. Petitioner asked for a transfer, and at least for an aide to be assigned. His requests were ignored and instead he was kept with the same students for three years without an aide, even though the principal found his ability to handle that specific group of students unsatisfactory. The dissent notes that petitioner's spotless record for the previous 18 years is not determinative, but it is still an important factor to be considered (*see Matter of Riley v City of New York*, 84 AD3d 442 [1st Dept 2011] [termination disproportionate where student was not

injured and the petitioner had a 15-year unblemished record]). Moreover, remediation efforts that were made proved unsuccessful at least in part because the advice given was neither consistent nor adequately targeted.

Although the dissent provides a litany of incidents in which petitioner failed to control the class, most of these incidents occurred in petitioner's first year with the class. The remainder of the incidents occurred the second year, and there were no incidents in the third year. Of the seven charges of which petitioner was found guilty, petitioner improved his management of the class so that the types of incidents underlying six of the charges did not recur in his final year with the class. His control of the class improved dramatically, as did the quality of his instruction and his compliance with DOE guidelines. The incident, of which petitioner was not aware, in which students were observing pornography on a computer in petitioner's classroom in the first year occurred because respondent's filters did not block the sites as petitioner had a right to expect. We note that all of petitioner's students were promoted after the 2008-2009 school year.

Respondent cites *Matter of Curtis v Black* (2012 NY Slip Op 30457[U] [Sup Ct, NY County 2012]) and *Matter of Ebewo v New York City Dept. of Educ.* (2011 NY Slip Op 32384[U] [Sup Ct, NY County 2011]) for the proposition that incompetence can be the basis of termination. In *Curtis* the Hearing Officer determined that termination was necessary to ensure the students' safety because the teacher's courses involved dangerous tools and equipment. There is no evidence here that petitioner's continued employment would endanger the safety and well-being of his students. In *Ebewo* the Hearing Officer determined that the teacher should be terminated because he was incompetent and was not making any improvements. Here, the Hearing Officer, PIP Plus professional, and others found that petitioner was improving despite the substantial challenges that his students presented.

In conclusion, we reiterate that it is troubling to see respondent's apparent determination to terminate petitioner, a 21-year veteran with 18 years of satisfactory ratings, because of his difficulty with one class in which he was kept for three years.

Accordingly, we find the Hearing Officer's decision to dismiss the teacher to be manifestly disproportionate to petitioner's conduct and remand the matter for the imposition of a lesser penalty. Concur—Friedman, Saxe and Freedman, JJ.

Tom, J.P., and Sweeny, J., dissent in a memorandum by Sweeny, J., as follows: The majority agrees that the Hearing Of-

ficer's determination that petitioner was guilty of the seven specified charges spanning a three-year period, was supported by adequate evidence (*see Lackow v Department of Educ. [or "Board"] of City of N.Y.*, 51 AD3d 563, 567 [1st Dept 2008]). However, because they find that the Hearing Officer's recommendation of termination as a penalty for those offenses is disproportionate and remand for consideration of a lesser penalty, I must dissent.

The majority credits petitioner's assertion that the assistance given to him by his supervisors and colleagues was inadequate. The record reveals however, that petitioner appealed his unsatisfactory ratings for school years 2008-2009 and 2009-2010 and those appeals were denied. Petitioner received 14 observations from his principal and assistant principals containing recommendations for the improvement of his performance. The school's administration also prepared three different "Plans of Assistance" for him each year after he was warned that he was in danger of receiving an unsatisfactory rating. His principal recommended that petitioner participate in the Peer Intervention Plus Program, and a mentor was assigned to work with petitioner.

The majority minimizes the nature and extent of petitioner's shortcomings. The charges that were sustained by the Hearing Officer, and not disputed by the majority, involved more than simply an inability to control his classroom in the face of a difficult group of students. They include allegations of neglect and disregard for student health, safety and well-being, failing to timely and/or properly manage his classroom, failing to properly and/or adequately engage students in instruction, failure to attend mandated faculty meetings, failure to properly, adequately and/or effectively plan and/or execute lessons, failure to timely, properly, adequately and/or effectively update, draft and/or implement his students' Individualized Educational Plans (IEPs), and failure to implement professional development recommendations. Significantly, petitioner did not dispute some of the more serious charges made by respondent. For example, he did not testify regarding two incidents where students were entering and leaving the classroom without permission and where students were rolling around on the floor. Nor did he testify regarding the allegation that he took no action when students were observed by another teacher viewing pornographic material on a school computer, as well as an allegation that he failed to prepare his classroom properly because it lacked, among other things, bulletin boards, charts, information about reading and writing, and a daily schedule. With respect to the

other charges, the Hearing Officer found more than adequate testimony, supported by contemporaneous records, to sustain those charges. Additionally, despite petitioner's claims to the contrary, the Hearing Officer found that his colleagues repeatedly entered his classroom to assist with student instruction, control student behavior, model lessons for him, and assist him with IEPs. The record does not support petitioner's claims that these remediation efforts were, as the majority finds, "neither consistent nor adequately targeted." In fact, the Hearing Officer's findings were supported by evidence which showed, among other things, that petitioner received observations, both formal and informal, beyond the required amount, which served to provide him with guidance and feedback as to his performance, as well as suggestions for improvement. Importantly, he participated in pre-observation conferences during which he was advised of his supervisors' expectations.

The Hearing Officer's credibility findings in favor of respondent's witnesses are entitled to deference and neither petitioner nor the majority has advanced any reason to disturb those findings (*Matter of Colon v City of N.Y. Dept. of Educ.*, 94 AD3d 568 [1st Dept 2012]; *Matter of Douglas v New York City Bd./Dept. of Educ.*, 87 AD3d 856, 857 [1st Dept 2011]).

In determining the appropriate penalty, the Hearing Officer properly considered, at petitioner's request, the efforts that respondent made to provide remediation, and his conclusion that those efforts were adequate is supported by the record. Petitioner received feedback and suggestions for improvement through observation reports and pre-observation conferences, plans of assistance and support from his colleagues, and he participated in the Peer Intervention Plus Program (*see* Education Law § 3020-a [4]).

The standard for reviewing a penalty imposed after a hearing pursuant to Education Law § 3020-a is whether the punishment of dismissal was so disproportionate to the offenses as to be shocking to the court's sense of fairness (*Matter of Harris v Mechanicville Cent. School Dist.*, 45 NY2d 279, 285 [1978]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974]). Contrary to the majority's conclusion, the record here supports the Hearing Officer's determination that termination is appropriate.

While it is true that petitioner has an unblemished record prior to the 2008-2009 school year, that factor alone is not determinative (*see e.g. Matter of Ajeleye v New York City Dept. of Educ.*, 112 AD3d 425, 425-426 [1st Dept 2013] [termination

"does not shock one's sense of fairness" where the petitioner was found guilty of insubordination, neglect of duty and conduct unbecoming his position, after a 14 year unblemished record]). In light of the Hearing Officer's findings of a long-term pattern of inadequate performance by petitioner and that sufficient attempts at remediation had been unsuccessful, the penalty of termination is not disproportionate to the offenses (*see Lackow*, 51 AD3d at 569). "That reasonable minds might disagree over what the proper penalty should have been does not provide a basis for vacating the arbitral award or refashioning the penalty" (*City School Dist. of the City of N.Y. v McGraham*, 17 NY3d 917, 920 [2011]).

I would therefore affirm the order and confirm the arbitration award.