In the Matter of LESLIE TAYLOR, Appellant, v CITY OF NEW YORK et al., Respondents. [30 NYS3d 104]—

Judgment, Supreme Court, New York County (Michael D. Stallman, J.), entered September 25, 2014, insofar as appealed from as limited by the briefs, denying the petition to annul a determination of respondents, dated December 6, 2013, which denied petitioner's appeal of an unsatisfactory performance rating (U-rating) for the 2012-2013 school year, and dismissing the proceeding brought pursuant to CPLR article 78, unanimously reversed, on the law, without costs, the petition granted, and the matter remanded to respondents for further proceedings.

Petitioner was hired as a probationary special education

teacher. During the first two years of her three-year probationary period, she had an exemplary record, receiving satisfactory ratings and several letters of commendation. In her third year, on November 20, 2012, petitioner participated in an annual review meeting concerning a special education student in her fourth-grade class (the annual review). At the meeting, petitioner opposed the position taken by the school's special education coordinator and sided with the student's mother, who had asked that her son be removed from the "Alternate Assessment" program favored by principal Jennifer Jones-Rogers.

The very next day, November 21, 2012, the principal conducted the first formal observation of petitioner for the 2012-2013 school year. On November 26, 2012, after a post-observation conference, the principal issued an observation report that found petitioner's math lesson unsatisfactory because: (1) "[she] did not model for children what [she] expected them to do"; (2) "[her] [l]esson did not address the problem [she] presented for students to solve"; (3) "[she] did not incorporate rigor in [her] lesson effectively"; and (4) "[she] did not include accountable talk structures in [her] lesson." The report advised petitioner that a "log of support" would be put in place for her "to grow [her] practice and move toward attaining satisfactory performance." Petitioner submitted a written rebuttal in which she stated that she had conducted the lesson in the exact manner that the principal had outlined in their pre-observation conference and that the post-observation conference focused more on the principal's dissatisfaction with the position petitioner had taken at the annual review than on the math lesson in question.

On February 21, 2013, assistant principal (AP) Scott Wolfson conducted a formal observation of another of petitioner's math lessons. The post-observation conference was not held until April 16, 2013, at which time petitioner was given an observation report that rated the lesson unsatisfactory because: (1) "[w]hile the children within your group were able to solve the problems that [she] presented to them, it was evident that their solutions indicated algorithmic solution strategies rather than a deeper conceptual understanding of the problems"; (2) "[she] failed to provide opportunities for [her] students to discuss their mathematical thinking with each other"; and (3) the questions that she posed "[did] not serve to develop children's conceptual understanding of mathematics, which should be our goal." The report advised petitioner that "[a]s a result of this lesson, we will continue to implement a log of assistance

in order to support you in our mutual goal of attaining a satisfactory rating."

Petitioner submitted a rebuttal stating that "[t]he fact that my [special education] students were able to solve the word problems with algorithmic solution was a huge accomplishment for my students who entered the fourth grade far below grade level" and that "Mr. Wolfson wanted to concentrate on the fact [that] the students struggled with conceptualizing their understanding of mathematics, which was not the goal for my lesson plan for that day." Petitioner added that "Mr. Wolfson and I also planned my lesson together two days before and [he] never mentioned that he wanted to observe how the students conceptualize math."

Meanwhile, on April 10, 2013, petitioner received a "Summons to Disciplinary Conference" from principal Jones-Rogers. On April 18, 2013, after a conference was held, the principal and the AP issued a letter advising petitioner that: (1) "[she] failed to suggest appropriate modifications to [her] students' IEP's to support their academic needs"; (2) "[i]n the case of [E.G.], [she] failed to provide [E's] parents with a promotion in doubt letter"; and (3) "[she was] negligent in [her] attention to the records and reports required of [her] in [her] capacity as special education teacher."

On April 22, 2013, petitioner received an overall U-rating for the 2012-2013 school year, even though her performance was rated satisfactory in 14 of the 22 categories considered. The rating form contained a signature by the principal, dated January 19, 2013, recommending "[petitioner's] discontinuance of probationary service." It also contained a signature by the district superintendent, dated January 22, 2013, adopting the recommendation. On April 24, 2013, petitioner received a revised U-rating that changed the date of the principal's and district superintendent's signatures to April 22, 2013.

The Department of Education discontinued petitioner's probationary employment as of May 29, 2013, a month before the school year ended. In June 2013, petitioner sought to review her personnel file and discovered that all of her satisfactory written formal and informal observations from the 2010-2011 and 2011-2012 school years were missing. On October 8, 2013, principal Jones-Rogers resigned.*

An administrative appeal hearing was conducted on Decem-

---

* Two months before her resignation, parents, teachers, students and a state senator had held a rally to protest principal Jones-Rogers' policies, which allegedly included retaliating against teachers who disagreed with her

ber 3, 2013. Principal Jones-Rogers did not appear. At the hearing, petitioner contended that the principal had engineered the two unsatisfactory lesson observations, the disciplinary letter, and the unsatisfactory 2012-2013 annual rating, which led to her termination, to retaliate against her because she opposed the principal's special education policies and had sided with the mother at the annual review. As to the disciplinary letter, petitioner maintained that she did not have the authority to unilaterally make the changes to the Individualized Education Plans (IEP[s]) that the principal and the AP faulted her for not making. She also complained that it was not until April that the principal and the AP sent a memo telling her that she had to revise E.G.'s IEP, by which time the deadline to add modified promotional criteria had passed.

Stephanie Flummery, the chapter leader at the school, testified on petitioner's behalf. Ms. Flummery stated that one of her duties was to discuss, with the administration, teachers who faced unsatisfactory reviews and that before November 2012 petitioner had never been criticized. In November 2012, petitioner contacted Ms. Flummery because the principal had told her that she needed to rethink her profession after petitioner had not agreed to force a parent to maintain her son on an alternate assessment. Before that, petitioner had always been "a shiny star" [sic] to the principal. After the second observation by the AP, petitioner told her that the principal had fired her. A meeting was then held at which the principal promised that she would "leave [petitioner] alone" and would not discontinue her. However, the principal went back on her word.

After the hearing, by letter dated December 6, 2013, the district superintendent affirmed the discontinuance of petitioner's probationary service.

The record demonstrates deficiencies in the performance review process resulting in petitioner's unsatisfactory rating (U-rating) for the 2012-2013 school year that were not merely technical but undermined the integrity and fairness of the process (*see Matter of Gumbs v Board of Educ. of the City Sch. Dist. of the City of N.Y.*, 125 AD3d 484 [1st Dept 2015]; *Matter of Brown v City of New York*, 111 AD3d 426 [1st Dept 2013]). Petitioner was not given an adequate opportunity to improve her performance, and the observation reports did not suffice to alert her that her year-end rating was at risk.

Petitioner's account of the post-observation conference held

and cramming students into special education classes without parental consent.

on November 26, 2012, where the principal allegedly focused on the annual review, rather than perceived flaws in petitioner's lesson, was not refuted at the hearing and, when viewed alongside the other evidence presented, raises a factual issue as to whether the principal engineered the U-rating to force petitioner from her job for refusing to go along with her policy of steering children into special education classes despite parental wishes to the contrary. While the November 26, 2012 observation report stated an intent to assist petitioner in obtaining a satisfactory performance level, certain of the meetings reflected in the support log were not specific to petitioner. A meeting with the math consultant did not address how to develop plans for children with special needs, and the special education coaching sessions listed were optional. At the hearing, AP Wilson acknowledged that petitioner had asked him to model a mathematics lesson and that he did not do it. Further, when asked if he had discussed the comments made by the principal at the November 26 post-observation conference at his December 3, 2012 meeting with petitioner, the AP said he did not recall discussing them.

Although the second observed lesson took place on February 21, 2013, the post-observation conference did not take place until April 16, 2013, almost two months later and only days before petitioner received the unsatisfactory U-rating. There is nothing in the record that would demonstrate that petitioner received any professional development support after February 28, 2013, the last entry in the support log. The long delay in providing feedback, together with the absence of any remediation after February 28, 2013 and the rapid sequence of events in April 2013, establishes that petitioner was not given an opportunity to remedy the alleged defects and implement the multiple recommendations (*see Matter of Brown*, 111 AD3d at 427). Concur—Mazzarelli, J.P., Andrias, Saxe, Moskowitz and Kahn, JJ.