OPINION OF THE COURT
Barbara Jaffe, J.
By notice of petition and verified petition, petitioner commenced the instant proceeding pursuant to Education Law § 3020-a (5) and CPLR 7511 for an order and judgment vacating an opinion and award issued by a hearing officer. (NY St Cts Elec Filing [NYSCEF] Doc Nos. 1, 2.) By pre-answer cross motion, respondent moves pursuant to Education Law § 3020-a (5) and CPLR 404 (a), 7511, and 3211 (a) (7) for an order dismissing the petition. (NYSCEF Doc Nos. 8, 9.)
I. Pertinent Facts
Petitioner began working for respondent in 2002, and became tenured in 2005. From 2002 to 2012, he received satisfactory annual ratings. In 2013, petitioner was assigned to the Mott Haven School, which receives students from other schools between the ages of 16 and 21 who have little or no high school credit, and helps them earn enough credits to graduate from high school. (NYSCEF Doc Nos. 9, 10.)
For the 2013/2014 school year, respondent issued petitioner an “ineffective” “Measure of Teacher Practice” (MOTP) score, which is based on class observations, although he received an “effective” “Measure of Student Learning” (MOSL) score, which is based on the Commissioner of Education’s determination that the teacher’s students showed effective growth as reflected *349 on tests performed at the beginning and end of a school year. (Id.; verified petition dated Sept. 11, 2015 [NYSCEF Doc No. 1].)
On February 5, 2015, the school’s assistant principal, John McSorley, informally observed petitioner’s class and completed a 2014/2015 Annual Professional Performance Review (APPR) evaluator form, in which he rated petitioner as “ineffective” in all of the evaluation categories, with specific examples of the reasons for each rating, including:
1. In the category of “creating an environment of respect and rapport,” McSorley stated that petitioner did not deal with disrespectful behavior, offering as examples thereof that:
a. several students were talking during the class and petitioner told one of them that he “should be writing not talking”;
b. a student belched and did not say “excuse me”; and
c. petitioner asked the students to share the assignment with the class and the students refused;
2. In the category of “managing student behavior,” McSorley wrote that petitioner did not deal with disruptive behavior, giving as examples, among others, that certain students were talking during the period, and one student was dancing in her seat; and
3. In the category of “using questioning and discussion techniques,” McSorley wrote that “students do not participate when called upon to share their work.”
McSorley made additional notes on the February 2015 APPR, including:
“(1) [McSorley] will teach a demo lesson on Thursday, February 12, 2015 during period 3 using the exact lesson that [petitioner] had planned. [Petitioner] will observe and take . . . notes and then [petitioner] will meet with [McSorley] at the end of the day to discuss the notes [petitioner] took and how the lesson compared with [petitioner’s] lesson; and
“(2) [McSorley] will meet with [petitioner] Monday mornings, starting on February 23, 2015, during period 1 to review the weeks [sic] lesson plans and provide feedback.”
McSorley did not sign the APPR until March 20, 2015; petitioner received a copy of it that day. (NYSCEF Doc No. 10.)
*350 On May 14, 2015, McSorley informally observed petitioner for 45 minutes, and again rated him as ineffective in all of the categories. McSorley advised petitioner that to improve his rating from ineffective to effective in the professional development category, he should meet with McSorley on Monday mornings to review his weekly lesson plans, and that during English department meetings he should bring and share student work, assessments, and lesson ideas in order to receive feedback. McSorley noted that these two steps would help petitioner receive an effective rating in several of the other categories. Although McSorley signed the May 2015 APPR on May 22, 2015, petitioner did not receive it until June 8, 2015. (Id.)
For the 2014/2015 school year, petitioner received an ineffective rating, although he again had an effective MOSL rating. (NYSCEF Doc No. 1.)
On September 11, 2015, respondent brought a disciplinary proceeding against petitioner, contending that he
“had demonstrated a pattern of ineffective teaching in that he received ‘Ineffective’ annual ratings for both the 2013-2014 and 2014-2015 school years. A peer validator agreed with the 2014-2015 ‘ineffective’ annual rating . . . [and that petitioner] demonstrated a neglect of duty, failure to follow procedures and carry out normal duties and responsibilities, misconduct, and incompetent and/or ineffective service” during the 2013/2014 and 2014/2015 school years.
Respondent thus issued the following specifications against petitioner:
“(1) [Petitioner’s] pedagogical practice was ineffective during the 2013-2014 school year;
“(2) [Petitioner’s] pedagogical practice was ineffective during the 2014-2015 school year;
“(3) Pursuant to the CBA, a peer validator was appointed to evaluate [petitioner] in a manner consistent with the Education Law § 3012 (c) during the 2014-2015 school year. The peer validator agreed with the overall ‘ineffective’ rating given to [petitioner] for the 2014-2015 school year;
“(4) During the 2014-2015 school year, [respondent] developed and substantially implemented a teacher improvement plan, in accordance with Education Law § 3012 (c);
*351 “(5) [Petitioner] failed to follow supervisory directions, acted unprofessionally, neglected duties and/or was insubordinate, in that he failed to attend a scheduled disciplinary conference, as referenced in a letter dated June 23, 2015;
“(6) [Petitioner] failed to follow school policy and procedure, neglected duties and/or was insubordinate, in that he failed to submit a personal business request form for non-attendance, as referenced in a letter dated June 23, 2015; and
“(7) During the 2013-2014 and 2014-2015 school years, [petitioner] failed to implement advice, counsel, instruction, remedial professional development and/or recommendations regarding:
“a) The elements of effective lesson planning and/or designing coherent instruction;
“b) Effective lesson execution;
“c) Classroom management and/or managing student behavior;
“d) Classroom environment and/or establishing a culture for learning and/or creating an environment of respect and rapport and/or organizing physical space;
“e) Professional decorum;
“f) Production/mainténance of required records/ documents;
“g) Differentiation;
“h) Demonstrating knowledge of content and pedagogy;
“i) Questions and/or using questioning and discussion techniques;
“j) Engaging students in learning; and/or
“k) Using assessment in instruction.” (NYSCEF Doc No. 1.)
At the hearing held on these specifications on November 16, 17, and 18, 2015, certain documents were provided to the hearing officer; neither party submitted them here. They include, as pertinent here, observation reports from January 21, 2014, February 11, 2014, March 12, 2014, and April 9, 2014, and from April 13, 2015, April 20, 2015, June 3, 2015, and June 5, 2015; peer validator forms and reports from November 5, 2014, December 16, 2014, and February 12, 2015; professional development documents, agendas, conference summaries, *352 conversation documents, and session notes; 2014/2015 Teacher Improvement Plans (TIPs) from September 2014 and June 2015; and the 2013/2014 and 2014/2015 end-of-year ratings. (NYSCEF Doc Nos. 9, 10.)
Also admitted in evidence at the hearing, and submitted here, along with the February 5, 2015 and May 14, 2015 observation reports, were the following:
“(1) McSorley’s letter dated June 17, 2015, scheduling an appointment with petitioner for June 19, 2015 at 9:45 am to ‘discuss an allegation of Professional Misconduct on June 16, 2015,’ which letter petitioner acknowledged receiving the same day; and
“(2) a copy of petitioner’s teaching schedule, reflecting that on June 19, 2015, he was scheduled to be the hall proctor from 9 am to 9:55 am.” (NYSCEF Doc No. 1.)
Testifying at the hearing for respondent was the peer evaluator, who observed petitioner’s class in November 2014,' December 2014, and on February 12, 2015, and wrote three reports. She was not sure whether petitioner received a copy of her reports, nor did she speak to petitioner or McSorley about her observations. Although she prepared a report shortly after each observation, the reports were not finalized and entered into the Department of Education’s computer system until June' 18, 2015. In the November 2014 report, although the evaluator rated petitioner as “ineffective” in the category of using assessment and instruction, she rated him as “highly effective” in the category of managing student behavior, “effective” in the categories of creating an environment of respect and rapport and using questioning and discussion techniques, and “developing” in the category of managing students in learning. In the December 2014 report, she again rated petitioner as “ineffective” in the category of using assessment and instruction, although she conceded that petitioner was not the lead teacher for the class and had not developed the lesson plan. (Id.)
McSorley also testified at the hearing, and agreed that an observation report is a useful professional development tool for providing a teacher with methods of improving his teaching for implementation before the next observation. In the 2013/2014 school year, he thrice informally observed petitioner and once formally. McSorley ordinarily had his secretary type the reports, have petitioner sign them, and give petitioner copies. *353 After the formal observation in April 2014, McSorley signed his copy of the report but conceded that he could not find a copy signed by him or petitioner, although he believed that the secretary had given petitioner a copy and had him sign it. He also held a post-observation conference with petitioner, developed a TIP for him, and referred him for outside professional development. Petitioner was offered other professional development opportunities during 2013/2014, and McSorley met with him during the 2013/2014 school year to discuss his teaching. (Id. )
During the 2014/2015 school year, the school implemented a TIP for petitioner in September 2014, and provided him with professional development throughout the year. (Id.)
Also testifying at the hearing were two teachers who worked with petitioner for approximately six weeks to improve his performance, and the school’s principal who also met with petitioner about his teaching. The principal referred petitioner for outside professional development, and agreed that observations for a particular school year were to be completed by the first week of June. Nonetheless, the principal only, and for the first time, observed petitioner’s classes on June 3 and 5, 2015. (Id.)
Petitioner testified that he never saw or received a copy of the April 2014 formal observation report, nor did he have a post-observation conference with McSorley. He received the February 12, 2015 observation report on March 20, 2015, the April 20, 2015 report on May 14, 2015, and the reports of April 13, 2015, May 14, 2015, June 3, 2015, and June 5, 2015, all on June 9, 2015. Petitioner also testified that on February 12, 2015, McSorley told him that McSorley would be giving a demo lesson in his class and that he would only be observing, which is reflected on McSorley’s February 2015 report, but that 5 to 10 minutes before the demo class was to begin, McSorley changed course and had petitioner teach the lesson with a peer evaluator observing him. Consequently, petitioner was not prepared to teach the class that day. (Id.)
Petitioner recounted how McSorley had scheduled petitioner’s disciplinary conference for June 19, 2015, having already scheduled him for hall proctoring for the same time. As McSorley’s office was close to the proctoring assignment, petitioner knocked on his door at the scheduled time, but no one answered. Petitioner thus believed that given the scheduling error, McSorley would reschedule their appointment. He did not do so.
*354 Petitioner believes that he was targeted by the school and by McSorley for complaining that although he was an English as a second language teacher, the students assigned to him already spoke English and were therefore improperly classified and placed in his class. (Id.)
By decision dated December 8, 2015, the hearing officer found, as pertinent here, that:
1. petitioner’s receipt of satisfactory MOSL scores is ir-revelant;
2. whether students were improperly assigned to his class is irrevelant;
3. petitioner’s claim that his ineffective ratings were made in retaliation to his complaint that his students were not properly assigned was unsupported;
4. although there were errors and omissions in the observation records, which the officer recognized as shortcomings and inconsistencies, those mistakes were insufficient to rebut respondent’s presumption of petitioner’s ineffective teaching after “applying a rule of reasonableness” to respondent’s actions;
5. the peer evaluations were properly considered even if petitioner was unprepared to give the lessons at issue as a “competent, experienced teacher should be able to provide effective instruction even on short notice”;
6. petitioner’s explanation for failing to attend the disciplinary conference was not credible; if, despite the alleged scheduling conflict, he arrived at McSorley’s door at the appointed time and found the door closed, “he could have stepped inside the door and informed someone he had a scheduling conflict”; and
7. while petitioner’s explanation for failing to submit an absence request form had merit and would not warrant discipline based on that sole action, when “viewed in the context of the totality of the evidence . . . [petitioner’s] refusal to supply an absence request form is consistent with .[his] behavior with regard to the most substantive charges against him.”
The officer concluded that
“[(p)etitioner] didn’t feel he needed to provide services to the students assigned to him. He didn’t feel he needed to provide lesson plans to the coaches assigned to him. He didn’t feel he needed *355 to provide differentiation of instruction or a formal mechanism for assessment in his classes. And he didn’t feel it was necessary to fill out an absence request form. Consistently, over two academic years, when [petitioner] didn’t feel it was necessary for him to do something, he simply didn’t do it.” (Id.)
The hearing officer thus sustained all seven specifications and found that petitioner had failed to rebut the presumption that the pattern of ineffective teaching demonstrated his incompetence and that he had not shown any extraordinary circumstances. The officer concluded that in light of petitioner’s incompetence, inefficient service, and neglect of duty during the 2013 to 2014 and the 2014 to 2015 school years, there existed just cause to terminate petitioner’s employment. (NYSCEF Doc No. 10.)
II. Contentions
Petitioner contends that the hearing officer’s decision was arbitrary and capricious as the officer failed to consider: (1) respondent’s failure to abide by required review procedures; (2) respondent’s improper motivations for its actions against petitioner; and (3) petitioner’s effectiveness as a teacher. (NYSCEF Doc No. 1.) He argues that the school violated various teacher evaluation rules related to the time frames of observations and reports, which rules would have provided petitioner information about his teaching and given him time to improve it. Petitioner asserts that the hearing officer overlooked respondent’s illegitimate motivations by not crediting his testimony about the disciplinary meeting with McSorley and by ignoring the improprieties of the observations, resulting in a decision that is arbitrary and capricious. Petitioner also argues that he proved that his teaching was effective, based on the satisfactory MOSLs he received, and that in light of the evidence presented, the penalty of termination shocks the conscience. (NYSCEF Doc No. 3.)
Respondent maintains that the hearing officer’s award may not be set aside notwithstanding his errors of law or fact, that the credibility determinations are unreviewable, and that petitioner’s disagreement with the findings does not establish that the decision was arbitrary arid capricious. And, given the findings, the penalty of termination does not shock the conscience. (NYSCEF Doc No. 9.)
*356 In reply, petitioner asserts that the decision here is subject to broader review, including whether there were errors in fact or law, that respondent’s procedural irregularities violated his rights and are not subject to a “rule of reasonableness,” and that the evidence undermines the officer’s credibility and factual determinations. He also argues that even if the determination is upheld, a lesser sanction is appropriate. (NYSCEF Doc No. 13.)
III. Petition
A. Applicable Education Law
The Education Law requires that a teacher’s performance be rated on a scale from highly effective, to effective, to developing, and finally to ineffective. A teacher’s year-end rating is based on both a MOTP score and a MOSL score. (NYSCEF Doc Nos. 9, 10.)
A tenured teacher may not be fired except for “just cause,” which includes a pattern of ineffective teaching or incompetence, defined as two consecutive years with an annual professional performance review in the lowest score bracket. Once a teacher receives an ineffective rating, the teacher is considered to be in “year two status,” which requires the appointment of an independent validator to review the teacher’s performance. If the teacher is rated ineffective for the second consecutive year, and an independent validator agrees with the rating, then respondent may bring a disciplinary proceeding against the teacher. (Education Law § 3012-c.)
In the disciplinary proceeding,
“the charges shall allege that the employing board has developed and substantially implemented a teacher improvement plan [and] . . . [t]he pattern of ineffective teaching or performance shall give rise to a rebuttable presumption of incompetence and if the presumption is not successfully rebutted, the finding, absent extraordinary circumstances, shall be just cause for removal.” (Education Law § 3012-c [5-a] |j].)
The Education Law also provides as the applicable legal standard that
“[t]wo consecutive ineffective ratings pursuant to annual professional performance reviews conducted in accordance with the provisions of [sections 3012-c or 3012-d of the Education Law] shall *357 constitute prima facie evidence of incompetence that can be overcome only by clear and convincing evidence that the employee is not incompetent in light of all surrounding circumstances, and if not successfully overcome, the finding, absent extraordinary circumstances, shall be just cause for removal.” (Education Law § 3020-b [3] [c] [v] [A].)
B. Applicable CPLR Article 75 Law
When a hearing is held pursuant to Education Law § 3020-a, a party who was subject to the hearing may apply to vacate the hearing officer’s opinion and award on the grounds that his rights were prejudiced by:
“(i) corruption, fraud or misconduct in procuring the award; or
“(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or
“(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or “(iv) failure to follow the procedure of this article.” (CPLR 7511 [b] [1].)
In reviewing such an award, the court must also determine whether it was rendered “in accord with due process and [was] supported by adequate evidence,” and whether it satisfies the arbitrary and capricious standard of CPLR article 78. (Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d 563, 567 [1st Dept 2008]; see also Matter of Davis v New York City Bd./Dept. of Educ., 137 AD3d 716 [1st Dept 2016] [same].) The party challenging the arbitration award bears the burden of proving that it is invalid (Lackow, 51 AD3d at 568), and if the motion to vacate is denied, the court must confirm the award (CPLR 7511 [e]).
As petitioner alleges neither that his rights were prejudiced by any of the circumstances set forth in CPLR 7511 (b) (1) nor that his due process rights were violated, I need only determine whether the award is arbitrary or capricious and/or whether the penalty imposed shocks the conscience.
C. Analysis
In Matter of Taylor v City of New York (139 AD3d 430 [1st Dept 2016]), the Appellate Division, First Department, granted a petition to annul a respondent’s determination to terminate *358 the petitioner’s employment and remanded the matter to the respondent for further proceedings. The Court found that as the petitioner’s second observed lesson was given in February 2013 and the post-observation conference was held in April 2013, only days before the petitioner received an unsatisfactory rating, and absent evidence that the petitioner received professional development support after February 2013, “[t]he long delay in providing feedback, together with the absence of any remediation after February . . .2013 and the rapid sequence of events in April 2013, establishes that petitioner was not given an opportunity to remedy the alleged defects and implement the multiple recommendations” (139 AD3d 430, 434 [1st Dept 2016]). The Court thus found that the “record demonstrates deficiencies in the performance review process resulting in petitioner’s unsatisfactory rating . . . for the 2012-2013 school year that were not merely technical but undermined the, integrity and fairness of the process.” {Id. at 433.)
Similarly, in Matter of Brown v City of New York (111 AD3d 426, 427 [1st Dept 2013]), the Court annulled the petitioner’s unsatisfactory rating, determining that the review process had been undermined by the school principal’s failure to provide the teacher with a written report for more than three months after the principal’s formal observation and “at the end of the school year when there was little time to implement the multiple recommendations,” and as the next observation was held only nine days after receipt of the last formal observation report. The Court thus observed that it was not surprising that the results indicated that the teacher had not implemented the recommendations. (111 AD3d 426 [1st Dept 2013].)
Here, although respondent’s witnesses acknowledged that the purpose of providing teachers with copies of observation reports is to enable them to work on improving their skills and address the issues raised in the reports before the end-of-year ratings are given, there is no evidence that petitioner ever received or saw the only formal observation report from 2013/ 2014, despite respondent’s evaluation rule requiring the school or respondent to provide teachers with formal observation reports within 90 days of the observation.
In the 2014/2015 school year, moreover, petitioner was not provided with copies of most of his reports in time for him to work on the alleged insufficiencies and improve his skills before the next observation or the end of the year. Instead, petitioner received, without explanation, four of the 2015 reports on June *359 9, 2015, within weeks of the end of the school year, and weeks, and in some cases months, after the observations. Respondent also fails to explain why petitioner was given four reports on the same day, or why no observations were made for the 2014/ 2015 school year before- February 2015, and thereafter six observations were conducted within 11 weeks. Although respondent’s rules require that observations be completed by the end of May, two of petitioner’s 2015 observations were conducted in June.
From the foregoing, it appears that respondent did not give petitioner notice of the results of observations in either 2013/ 2014 or 2014/2015 in time for him to even try to improve his performance before the end of each school year. While the hearing officer acknowledged respondent’s shortcomings and failures related to the observation reports and ratings, including and specifically that some were not timely provided to petitioner, the officer nonetheless excused them pursuant to a “rule of reasonableness.” Absent any authority as to the relevance or applicability of such a rule here, it is not considered.
Respondent also offered no explanation for McSorley’s conduct in placing petitioner between a rock and a hard place by scheduling the June 2015 disciplinary conference at the same time he assigned petitioner to monitor the school’s halls.
All told, McSorley’s conduct brings into question the objectivity of his ratings and evaluations of petitioner and whether he attempted in good faith to put petitioner on notice of his deficiencies and give him a chance to address them. For example, while McSorley observed petitioner on February 5, 2015, he did not give him a copy of the report until March 20, 2015, even though he stated therein that in order to improve his performance, McSorley would teach a demo lesson on February 12 and starting on February 23 petitioner and McSorley would meet to review petitioner’s lesson plans. While he observed petitioner in May 2015 and advised him that in order to improve his performance, he should meet with McSorley on Monday mornings and take certain steps during English department meetings, he did not give petitioner a copy of the report until June 9, 2015. In both cases, it is unclear how petitioner was expected to comply with dates and attend meetings and perform certain tasks when he was not informed of them until weeks later.
McSorley also observed petitioner several times in 2015 but did not give him a copy of the reports until June 2015, *360 sometimes months after the observation, without explaining the delay, and he did not ensure that petitioner received a copy of the 2014 formal observation report. In his March and May 2015 reports, McSorley’s examples of petitioner’s failures as a teacher are primarily based on minor incidents, and he misinformed petitioner about the plan for his lesson on February 12, 2015, with short notice that the plan had changed and that petitioner would be evaluated by a peer evaluator, and he scheduled petitioner for a disciplinary conference at the same time he had assigned petitioner to serve as a hall monitor. As the end-of-year ratings are subjective and based on individual opinions of respondent, including, and apparently mostly, McSorley’s opinion, McSorley’s conduct should have been considered in evaluating whether there was a sufficient basis' for the ratings.
There is also no evidence that petitioner did not attend professional development classes or did not avail himself of the professional development assistance provided by the school or respondent. And, while the hearing officer was not persuaded by petitioner’s effective MOSL ratings during the same years he received ineffective ratings from the school, the MOSL ratings ought not be discounted in light of all of the other issues related to the ratings as addressed above. It is also significant that petitioner received satisfactory ratings for the 11 years immediately preceding his transfer to the school and only then received ineffective ratings.
The result of respondent’s failure to observe procedures designed to ensure the fairness and integrity of the rating system was to deprive petitioner, a tenured teacher with 13 years of experience and 11 years of satisfactory ratings, of the opportunity to improve his performance before receiving two years of ineffective ratings; it ultimately cost him his employment and livelihood.
In light of the foregoing, I find that the hearing officer’s determination that petitioner had not rebutted the presumption of incompetence was arbitrary and capricious, and that petitioner has shown by clear and convincing evidence that he is not incompetent, and that, in any event, the penalty imposed shocks the conscience.
I also need not consider petitioner’s contentions regarding respondent’s motivations or the effectiveness of his teaching, to the extent I have not already considered them, nor do I need to address respondent’s cross motion to dismiss.
*361 IV. Conclusion
Accordingly, it is hereby ordered and adjudged, that the petition is granted and respondent’s determination is hereby vacated and annulled; and it is further ordered, that respondent’s cross motion to dismiss is denied.